SCHNITZ v. GRAND RIVER AVENUE DEVELOPMENT CO.

1. VENDOR AND PURCHASER—FRAUD—PROMISES—RESCISSION.
    Alleged representations of salesman that boulevard, abutting lot plaintiff later purchased, was to be opened throughout entire subdivision and connect with another main thoroughfare *held*, to constitute a promise of future conduct, and, since there was no showing it was made with fraudulent intent, it cannot be made the basis for rescission.

2. SAME—VACATION OF PART OF PLAT—FAILURE OF CONSIDERATION.
    Vacation of nearby portion of plat for declared purpose of re-subdividing which plaintiff claimed reduced potential field of trade for boulevard abutting his lot *held*, an insufficient showing of failure of consideration to justify rescission of his contract to purchase lot in same subdivision.

3. RESCISSION—EQUITY—DISCRETION OF COURT.
    Rescission is not a matter of right but rests in the sound discretion of the court and each case must be decided on its own particular facts.

4. VENDOR AND PURCHASER—RESCISSION—FAILURE OF CONSIDERATION—PAYMENTS—LACHES.
    Purchaser of subdivision lot *held*, not entitled to rescission of contract because of claimed failure of consideration in that some improvements were not installed, where he waited several years after ceasing to make payments and after property values had begun to decline before asking rescission.

5. EVIDENCE—JUDICIAL NOTICE—DEPRESSION.
    Supreme Court takes judicial notice of the depression and that in 1929 property values, particularly those of subdivision property, began to decline in most instances and continued to do so for several years.

Appeal from Wayne; Chenot (James E.), J. Submitted January 15, 1935. (Docket No. 90, Cal-

endar No. 38,040.)  Decided April 8, 1935.  Rehearing denied May 17, 1935.

Bill by Jack L. Schnitz against Grand River Avenue Development Company, a Michigan corporation, for rescission of a land contract.  Cross-bill by defendant for sums due on land contract.  Cross-bill withdrawn.  Bill dismissed.  Plaintiff appeals.  Affirmed.

*John Sklar* (*Samuel Shimans,* of counsel), for plaintiff.

*Warren, Hill, Hamblen, Essery & Lewis* (*William C. Allee* and *John K. Worley,* of counsel), for defendant.

BUTZEL, J.  In 1925 plaintiff, Jack L. Schnitz, an engineer of Jackson, Michigan, who had had previous experience in subdivision work, became interested in the purchase of the north one-half of lot 419 of Grindley Park subdivision, sections 33 and 28, town 2 south, range 10 east, township of Dearborn, Wayne county, Michigan, according to the plat thereof recorded in the office of the register of deeds for Wayne county, Michigan.  The subdivision, as platted, contained 919 lots, but defendant Grand River Avenue Development Company owned only a part of the property, including a block of 221 lots approximately in the center of the subdivision. Plaintiff visited the property before making his purchase.  He found it under development, with improvements being made.  Lot 419 fronted on Monroe boulevard, which, as shown on the plat, was a street 80 feet wide, running from the southerly to the northerly limits of the subdivision, a distance

of approximately one mile. Plaintiff claims it was represented to him that the boulevard was to be extended so that it would join a thoroughfare of similar name which ran into Dearborn, Michigan, as one of its principal streets, and that it also would thus lead to the Ford airport. The contract was tendered to plaintiff at Jackson, Michigan, by a representative of the company which was acting as sales agent for defendant. Plaintiff claims that he was hurried into signing the contract, without having an opportunity to read it carefully. He, however, received a copy duly signed by defendant and had ample time to read it and promptly make his objections, if there were any. The record does not show that any complaint was made by him until many years later, nor can he claim ignorance or inexperience. The contract, dated October 12, 1925, provided for a purchase price of $1,980, with a down payment of $396, and monthly instalments of $19.80, the entire contract price, plus interest, to be paid up within five years. Plaintiff paid his instalments regularly until June 10, 1929, but thereafter made only two payments, of $39.60 each, on June 10, 1930, and September 8, 1930. No further payments were made after the latter date, at which time $985.51 was still due on the contract. There is no question but that plaintiff was in default on his payments.

On October 11, 1932, he filed a bill for rescission, claiming fraud, breach of contract, and failure of consideration, and sought to recover all payments made by him. A cross-bill for foreclosure, filed by defendant, was later dismissed, and we therefore need not consider it here. Plaintiff's chief claim of fraud is based upon the alleged representation of the salesman that Monroe boulevard was to be

opened throughout the entire subdivision so as to continue through to the city of Dearborn, Michigan. As a matter of fact, notwithstanding the showing on the plat, Monroe boulevard has never been opened except for the two-block strip in front of and in the immediate vicinity of lot 419. At most, however, the alleged fraudulent representation, which was not incorporated in the contract, constitutes a promise as to the intended future conduct of defendant, and as there is no showing whatsoever that it was made with actual fraudulent intent, nor can such intent be inferred from the facts as stated in the record, it cannot be made the basis for rescission. *Kellam* v. *Frischkorn Real Estate Co.,* 242 Mich. 572; *Burlingame* v. *B. E. Taylor Realty Co.,* 247 Mich. 109.

Plaintiff claims that shortly after the contract was entered into, defendant caused the vacation of the plat as to a block of lots south of the one purchased by him. The vacation was made in April, 1926, by an order of the circuit court on a petition filed by defendant, in which the purpose was declared to be the resubdividing of the lots. There was nothing secret or fraudulent about the proceeding, and notwithstanding plaintiff's claim that it reduced the potential field of trade for Monroe boulevard as the proposed business artery of the subdivision, we do not believe that under the circumstances there is a sufficient showing of failure of consideration to justify rescission of the contract.

Plaintiff further claims that there has been substantial and material breach of contract justifying rescission, arising out of the noninstallation of improvements promised by defendant, particularly as to the stoning of Monroe boulevard in front of lot 419. The contract provided no time within which to

make the improvements, but expressly stated that the noninstallation of any or all of such improvements should not constitute grounds for discontinuance of the instalments to be paid by the plaintiff. The covenant for improvements, which was expressely restricted to the block of 221 lots in the center of the subdivision, included the grading and cinderizing or stoning of the streets in front of the lots specified. Monroe boulevard was stoned only to the extent of two wheel tracks, wide enough for the passage of but a single vehicle. The contract, however, is silent as to the width to which such streets must be stoned. There may be a question whether this is a sufficient compliance with the contract. Although other promised improvements have not been completed in some minor respects, it is admitted that a large proportion of them have been installed, and the trial court in dismissing plaintiff's bill held that there was a sufficient compliance with the provisions of the contract.

Rescission is not a matter of right but rests in the sound discretion of the court. *Amster* v. *Stratton*, 259 Mich. 683; *Baughan* v. *Mortgage & Contract Co.*, 263 Mich. 249. Each case of rescission must be decided on its own particular facts. Whatever merit there may be in plaintiff's claim of failure of consideration, as heretofore shown, or in other minor matters which it is unnecessary to discuss, we do not believe that he is entitled to equitable rescission under all the facts of this case. Plaintiff defaulted in his payments in 1929. He did not cure the default in 1930, and approximately one-half of the purchase price was unpaid when the balance fell due at the date of maturity. Plaintiff visited his property in 1928, and again in 1929, after he had defaulted on his payments. He must have known

at that time of the alleged breaches on defendant's part upon which he grounds his present action for rescission. As a matter of fact, plaintiff's counsel declared in his opening statement that plaintiff ceased further payments in 1930 because it appeared he was not going to get what he had been promised. Yet instead of rescinding at that time, plaintiff waited for two years before taking any action.

We take judicial notice of the depression, and we are too well aware from the litigation that has been presented to us that in 1929 property values began to recede in most instances, particularly so as to subdivision property. Values continued to fall in the following years, and there was great uncertainty as to whether the decline would continue or whether values would begin to advance again toward their former level. If plaintiff was dissatisfied, he should have acted promptly and, if entitled to rescission, should have given defendant the opportunity to minimize its loss by resale. Under the circumstances, we believe that if plaintiff has any grievance, a question which we need not determine at the present time, his remedy lies in an action at law for damages.

The decree of the trial court dismissing the bill is affirmed, with costs to defendant.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.