McMULLEN v JOLDERSMA

Docket No. 97773. Submitted March 2, 1988, at Grand Rapids. Decided September 22, 1988.

In 1981, George and Virginia McMullen purchased a party store which was owned by Paul and Mary Joldersma and located in Newaygo County. The McMullens were represented by an attorney and a certified public accountant during the negotiations. In September, 1984, Virginia Rose McMullen and Mac's Party Store, Inc., filed suit against the Joldersmas, Buehler Realty, Inc., and realtor James M. Parrette in Newaygo Circuit Court alleging that defendants fraudulently concealed the material fact that a planned State of Michigan highway bypass would divert much traffic away from the store and that the bypass when completed destroyed the value of their business. Plaintiffs sought rescission of the land contract, restitution, and exemplary damages for mental distress. An amended complaint was subsequently filed alleging fraud and innocent misrepresentation against all the defendants, and breach of contractual duty of care against Buehler Realty and Parrette. The court, Charles A. Wickens, J., granted summary disposition in favor of Buehler Realty, Inc., and James Parrette. Following a three-day bench trial, the court found no cause of action against the Joldersmas and awarded costs to them. Plaintiffs appealed.

The Court of Appeals *held:*

1. Plaintiffs' claim of silent fraud, or fraudulent concealment of a material fact, against Buehler Realty and Parrette was properly dismissed. These defendants had no duty to disclose the pending bypass plans to the purchasers. Neither Buehler Realty nor Parrette was a party to the underlying business transaction nor was this a situation where the challenged information was subsequently acquired rendering previous statements untrue or misleading.

2. The claim of innocent misrepresentation also was properly

REFERENCES

Am Jur 2d, Appeal and Error § 700; Brokers § 108; Fraud and Deceit §§ 12-19, 144 *et seq.*; Vendor and Purchaser §§ 554-556, 565 *et seq.*

Liability of vendor's real estate broker or agent to purchaser for misrepresentations as to, or nondisclosure of, physical defects of property sold. 46 ALR4th 546.

dismissed as to Buehler Realty and Parrette. A claim of innocent misrepresentation requires that there be privity of contract. There was no privity of contract between plaintiffs and Buehler Realty and Parrette.

3. The trial court correctly determined that there was no actionable fraud on the part of the Joldersmas in failing to disclose the reconstruction bypass plan. Plaintiffs did not rely on the statements or omissions of the Joldersmas. Plaintiffs' claim that the Joldersmas are responsible for any fraudulent concealment by their agent James Parrette and listing agent, Bonnie Robbins, is also rejected for the same reason.

4. Plaintiffs' claim that they should not be charged with knowledge of the public record regarding the bypass plans is rejected.

5. Because the bypass project was only a future possibility at the time of the sale, contingent upon federal approval and funding, the Joldersmas' failure to inform plaintiffs of the plans did not constitute a fraudulent omission.

6. The court did not err in finding that plaintiffs were not damaged by the highway bypass. The store lost business for reasons other than the bypass.

7. Plaintiffs' contention that the court erred in excluding a witness from testifying in plaintiffs' case in chief was not properly brought before the Court of Appeals. Plaintiffs failed to cite any authority supporting their contention.

8. The court did not abuse its discretion by admitting testimony concerning financial operations of the store after the date of closing. Plaintiffs sought rescission, thus it was necessary for the court to examine all the facts to determine the appropriateness of rescission.

Affirmed.

1. Fraud — Innocent Misrepresentation — Privity of Contract.
   Privity of contract must be established to properly state a claim of innocent misrepresentation.

2. Fraud — Silent Fraud.
   The elements for establishing fraud or silent fraud are: (1) a material representation which is false; (2) known by defendant to be false, or made recklessly without knowledge of its truth or falsity; (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury.

3. Fraud — Fraudulent Concealment.
   The false material representation needed to establish fraud may

be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose; such an action is one of fraudulent concealment.

4. Fraud — Real Estate — Future Highway Plans — Fraudulent Omission.

The failure of a seller of real estate to mention to a prospective purchaser the fact that a highway bypass might occur in the future near the property does not constitute a fraudulent omission.

5. Contracts — Rescission — Mitigation of Damages.

The extent to which plaintiffs in a rescission action attempt to mitigate their damages is irrelevant; the remedy of rescission returns the parties to the status quo, i.e., it places the parties in the position they occupied before the transaction took place.

6. Appeal — Citation of Authority.

A party may not leave it to the Court of Appeals to search for authority to sustain or reject a position.

7. Vendor and Purchaser — Land Contracts — Rescission.

Rescission of a land contract should not be granted where the result would be inequitable; the decision rests within the sound discretion of the court and each case must be decided on its own particular facts.

*Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri* (by *W. Brad Groom*), for plaintiffs.

*Miller, Johnson, Snell & Cummiskey* (by *Edward R. Post*), for Paul and Mary Joldersma.

*Rhoades, McKee & Boer* (by *Arthur C. Spalding* and *Michael T. Small*), for Buehler Realty, Inc. and James M. Parrette.

Before: Sullivan, P.J., and MacKenzie and G. Schnelz,* JJ.

Per Curiam. Plaintiffs appeal as of right a December 20, 1986, circuit court judgment of no cause of action against defendants Paul and Mary

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Joldersma and separate circuit court orders granting defendants Buehler Realty, Inc., and James M. Parrette's motion for summary disposition. Plaintiffs present a myriad of issues for our review; however, we find that none require reversal.

This case arose out of a dispute over alleged fraudulent representations and omissions surrounding the sale of a party store located in Newaygo County, Michigan. On July 23, 1981, defendants Paul and Mary Joldersma sold their party store to plaintiffs on a land contract. In September, 1984, plaintiffs filed suit against the Joldersmas, Buehler Realty, Inc., and realtor James Parrette, alleging that defendants fraudulently concealed the material fact that the State of Michigan had plans to construct a highway bypass as part of M-37 running north from Newaygo which would substantially divert all traffic from both M-82 and M-37 away from the party store. Plaintiffs further alleged that the construction of the bypass, which was completed in 1984, destroyed the value of their business. Plaintiffs sought rescission of the land contract, restitution, and exemplary damages for mental distress.

On April 18, 1985, plaintiffs filed an amended complaint alleging the following: fraud against the Joldersmas, Parrette, and Buehler (Counts I and IV); innocent misrepresentation against the Joldersmas, Buehler, and Parrette (Counts II and V); and breach of contractual duty of care against Buehler and Parrette (Count III).

On May 8, 1985, defendants Buehler Realty and Parrette moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). On June 14, 1985, defendants Paul and Mary Joldersma followed suit and filed their motion for summary disposition on the basis of MCR 2.116(C)(7) and (10).

On June 18, 1985, an initial hearing on all

defendants' motions was held before Judge Terrence Thomas. Judge Thomas took the various motions under advisement and, while a decision was pending, removed himself from the case because of a potential conflict of interest. On February 24, 1986, a hearing was held before Judge Charles Wickens on the various summary disposition motions. On March 13, 1986, Judge Wickens issued his opinion granting summary disposition to defendants Buehler Realty, Inc., and its agent, James Parrette. In the same opinion, defendants Joldersmas' motion was denied because the court concluded that a factual issue was presented.

Plaintiffs then proceeded to a three-day bench trial against the only remaining defendants, Paul and Mary Joldersma, in which plaintiffs primarily sought rescission of the land contract and damages for fraud. About six months after trial, Judge Wickens issued his opinion of no cause of action and awarded costs to the Joldersmas.

Plaintiffs argue first that the court erred in granting summary disposition in favor of Buehler Realty, Inc., and James M. Parrette. As there is no mention whatsoever in the court's opinion regarding the statute of limitations as a basis for summary disposition, we decline to address that aspect of plaintiffs' argument.

In granting summary disposition in favor of these defendants, the court reasoned:

> There is no privity of contract between the Plaintiffs and the real estate agency that would justify this action. There is no activity by either of these defendants growing out of the scope of their agency relationship with the sellers which would warrant an action against the real estate agency separate from the sellers.

Although not expressly stated, the tenor of the

court's ruling indicates that it was based on MCR 2.116(C)(8).

In Count IV of the first amended complaint, plaintiffs alleged "silent fraud" or fraudulent concealment of a material fact against Parrette and Buehler. In Count V, the theory of innocent misrepresentation was alleged.

We first address the former theory, i.e., "silent fraud" or fraudulent concealment of a material fact. As correctly noted by defendants, Michigan courts have held a seller liable to a buyer for failing to disclose material defects in the property or its title. See, e.g. *Groening v Opsata,* 323 Mich 73, 83; 34 NW2d 560 (1948); *Ball v Sweeney,* 354 Mich 616; 93 NW2d 298 (1958). However, to date there are no cases holding that a real estate agent is similarly liable for such a fraud. We do not believe that, by virtue of their agency relationship as real estate agents for the sellers, defendants were duty bound to disclose the pending bypass plans to the buyers. Neither Parrette nor Buehler was a party to the underlying business transaction nor was this a situation where the challenged information was subsequently acquired rendering previous misstatements untrue or misleading. *United States Fidelity & Guaranty Co v Black,* 412 Mich 99; 313 NW2d 77 (1981). Under the circumstances, the imposition of such a duty would necessarily conflict with the duty defendants owed to the seller. Moreover, we find it noteworthy that plaintiffs were not without representation. Indeed, they were represented by an attorney and, also, a certified public accountant, Roy Heppe. By her own testimony, Virginia McMullen testified that prior to concluding the transaction she asked Heppe "to check out the area and about the flow of traffic and so forth." Thus, we find defendants owed no duty, either legal or equitable, to disclose

the fact that there existed plans for the reconstruction project. Consequently, plaintiffs would not be able to prevail on this claim.

Although plaintiffs focus on Count IV, we also find that Count V, innocent misrepresentation, was properly dismissed. In order to properly state a claim under this theory, privity of contract must be established. *United States Fidelity, supra* at 118-119. We find that such a requirement was lacking as between plaintiffs and Parrette and Buehler and, thus, summary disposition was properly granted as to this claim as well.

Similarly, plaintiffs also claim that the trial court erred in determining that defendants Paul and Mary Joldersmas' actions in failing to disclose the reconstruction bypass plan constituted actionable fraud. We disagree.

In *Jaffa v Shacket,* 114 Mich App 626, 640-641; 319 NW2d 604 (1982), the elements for establishing fraud or silent fraud were set forth:

> "(1) a material representation which is false; (2) known by defendant to be false, or made recklessly without knowledge of its truth or falsity; (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury. . . . The false material representation needed to establish fraud may be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose. Such an action is one of fraudulent concealment." [Citations omitted.]

After hearing all the evidence, the trial court concluded there was "no fraud or innocent or intentional concealment or misrepresentation on the part of Defendant sellers." The trial judge found no existing facts that created for the sellers a duty to disclose the possibility that the reloca-

tion of M-37 might take place in the future, pending federal funding. Additionally, the pertinent facts with respect to the proposed project were of public record and plaintiffs employed Roy Heppe, a CPA, to investigate these facts for them. Finally, the court concluded that, even if the relocation of M-37 would have been material to plaintiffs' store operation, they did not rely on the sellers to disclose this information but, rather, relied on Heppe, in whom they had placed their reliance.

We are not persuaded, after thoroughly examining the entire record, *Kar v Hogan,* 399 Mich 529, 546; 251 NW2d 77 (1976), and giving due consideration to the trial court's opportunity to judge the credibility of the witnesses, *Daane v Lovell,* 83 Mich App 282, 284; 268 NW2d 377 (1978), lv den 405 Mich 846 (1979), that the court erred in this instance. Testimony clearly established that approval for the project was still ongoing several months after plaintiffs purchased the store. Indeed, final approval from the federal government did not obtain until September 10, 1982, well over a year after the purchase (July 23, 1981). Moreover, such information was a matter of public record and had been so for years.

Not insignificantly, plaintiffs wrote to the state Department of Licensing and Regulation on June 20, 1983, requesting a full inquiry regarding Heppe's alleged malpractice with respect to the purchase. Excerpts from this letter further evidence plaintiffs' reliance on Heppe regarding the decision to purchase the property:

> In summary: *Our purchase was contingent upon the findings and recommendations of Mr. Heppe, whom we paid, for his professional expertise.* Because of this, we now find ourselves with a party store that was over priced—which we cannot sell

because of the land contract balances and the fact it is to be by-passed by the Michigan State Highway Department.

When construction of the by-pass is started, I can think of no conceivable way a payment of $1,167 per month plus expenses can be made. Mr. Joldersma knew this—Mr. Parrette knew this—we paid Mr. Heppe—*now* we know it. *We trusted Mr. Heppe completely*—placed our lifesavings, assets and future in his hands. In addition, I terminated my employment at Ford Motor Company after 24 years (30 year retirement and benefits) to purchase this store.

In conclusion, may I ask—Is not this C.P.A. responsible? Do we Have recourse? In our personal opinion, we feel he may be guilty of breach of ethics. [Emphasis added.]

We are unpersuaded that the court erred in finding that plaintiffs did not in fact rely on the statements or omissions of the Joldersmas, James Parrette, or Bonnie Robbins. Rather, plaintiffs relied upon the recommendations of their agent, Roy Heppe. As reliance upon a false representation or omission of fact is a requisite element, *Jaffa, supra* at 640-641, plaintiffs simply cannot assert that a fraud was perpetrated upon them by parties upon whom they did not rely. For this reason we similarly find no merit to plaintiffs' claim that the Joldersmas are responsible for any fraudulent concealment by their agent James Parrette and listing agent, Bonnie Robbins.

Plaintiffs next claim that they should not be charged with knowledge of the public record regarding the bypass plans. However, we find the cases cited by plaintiffs distinguishable from the case at bar. Further, failure to disclose the plan had no impact on the property title, per se. Significantly, plaintiffs admit that prior to entering into the business transaction, they took note of the

"rickety old bridge." A reasonable inquiry would have revealed the existence of the bypass project.

Finally, with respect to this issue, plaintiffs rely upon the following rule quoted in their brief:

> The law of constructive notice can never be so applied as to relieve a party from responsibility for actual misstatements and frauds, and to prevent a representee from having a right to rely upon representations under such conditions. *Thus, one to whom a misrepresentation is made is not held to constructive notice of a public record which would reveal the true facts.* [37 Am Jur 2d, Fraud and Deceit, § 262, p 350. Emphasis added by plaintiffs.]

However, in this case defendants did not make "actual misstatements" regarding the bypass plans. Indeed, the very essence of this case is their failure to say anything at all.

We have carefully reviewed plaintiffs' next argument—that a seller can be liable for a misrepresentation of a future event—and find it has no merit. At the time of purchase, the bypass project was a future possibility—contingent upon federal approval and funding. Because of this fact, the Joldersmas' failure to inform plaintiffs did not constitute a fraudulent omission.

We have similarly reviewed plaintiffs' next allegation—that defendants failed in their burden of proving that plaintiffs did not rely upon defendants' misrepresentations or omissions of fact— and find no reason to set aside the verdict on this basis.

Plaintiffs also claim that a defrauded party to a contract can rely on more than one representation and, thus, reliance on Heppe's recommendation does not relieve the Joldersmas of liability because plaintiffs also relied on a continuation of traffic as

represented by the Joldersmas. However, the court expressly found plaintiffs did not rely upon statements or omissions of the Joldersmas. Having previously concluded that the court did not err in its findings, we find no basis for this claim.

Plaintiffs also contend that the Michigan Department of Transportation's adoption of Proposal B (Bypass Plans) was a material fact. Be that as it may, materiality is but one element of fraud. The court concluded, and we do not disagree, that plaintiffs failed to establish all of the requisite elements necessary to prevail.

As to plaintiffs' next issue, we agree that in the context of a rescission action, as here, it is irrelevant to what extent plaintiffs attempted to mitigate their damages.

Plaintiffs also assert that they have demonstrated the requisite legal damage suffered as a result of their reliance upon the alleged misrepresentation of defendants. However, defendants' expert, Eric Adamy, testified that in his opinion the store was not nearly as profitable after plaintiffs assumed the business for reasons other than the relocation of M-37. According to Adamy, plaintiffs did not adequately promote the store, they did not maintain an adequate inventory, there was decreased emphasis on electronic sales, there was an economic recession, and finally, the number of party stores in Newaygo County increased. The court apparently gave considerable weight to this testimony and concluded that plaintiffs had not been damaged by the highway bypass. We do not find error.

We cannot lose sight of the fact that during the last full year the Joldersmas operated the store, the gross sales were $365,727.02. After the first full year plaintiffs operated the business, gross sales dropped to approximately $200,234 (year end-

ing June 30, 1982), followed by another decline to $163,730 for the next year (ending June 30, 1983). By the close of the next fiscal year (ending June 30, 1984), sales had increased slightly to $174,104. By the end of the fiscal year, sales had declined to $152,000. Significantly, however, the bypass project was not constructed until the first six months of 1984 which lends credence to the court's conclusion that the relocation of M-37 had no significant impact on the decline in sales. Rather, it was owing to factors other than the bypass.

Plaintiffs further contend that the trial court erred in excluding a witness, Calvin Deitz, from testifying in plaintiffs' case in chief. However, by failing to state any authority for their contention that the court's ruling was error, this issue is not properly before us. As we have consistently stated, a party may not leave it to this Court to search for authority to sustain or reject a position. *Cramer v Metropolitan Savings Ass'n (Amended Opinion),* 136 Mich App 387, 400; 357 NW2d 51 (1984).

We have carefully reviewed plaintiffs' final allegation of error and are unpersuaded that the court abused its discretion by admitting testimony concerning financial operations of the party store after the date of closing. As the parties agree, plaintiffs sought rescission, an equitable remedy. Not only is this information relevant as to plaintiffs' fraud claim, the remedy of rescission returns the parties to the status quo, i.e., it places the parties in the position they occupied before the transaction in question. *Grabendike v Adix,* 335 Mich 128, 140; 55 NW2d 761 (1952); *Interstate Automatic Transmission Co, Inc v Harvey,* 134 Mich App 498; 350 NW2d 907 (1984), lv den 422 Mich 852 (1985).

Rescission of a land contract should not be

granted where the result would be inequitable. The decision rests within the sound discretion of the court and each case must be decided on its own particular facts. *Schnitz v Grand River Avenue Development Co,* 271 Mich 253, 257; 259 NW 900 (1935). Here, it was necessary for the court to examine all the facts to determine the appropriateness of rescission. After doing so, the court concluded, inter alia, that plaintiffs could not restore defendants to the status quo and were not entitled to rescission. We cannot say, given all the circumstances of this case, that the court erred so as to require reversal by allowing the challenged testimony. Moreover, and contrary to plaintiffs' claim, we find no evidence that the court was biased in defendants' favor.

We are not unmindful of the hardship that has befallen plaintiffs with respect to acquisition of the party store and we express no opinion, beyond the scope of our appellate review, as to the origin. However, this case was heard on the merits and we find no basis in law or equity to upset the final verdict.

Affirmed.