**Morton L. SCHOLNICK and Stuart G. Freedman, Plaintiffs,**

v.

**Robert V. SCHECTER, Inmark Securities Corp., Bluma R. Schecter and Continental Bank, Defendants.**

Civ. A. No. 90–CV–71999–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 12, 1990.

**1318**

D. Michael Kratchman, Evans & Luptak, Detroit, Mich., for plaintiffs.

Philip J. Kessler, Butzel, Logn, Detroit, Mich., for Schecters.

Richard A. Rossman, Pepper, Hamilton, Scheetz, Detroit, Mich., for Continental Bank.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CONTINENTAL BANK'S MOTION TO DISMISS

FRIEDMAN, District Judge.

This matter is presently before the court on defendant Continental Bank's motion to dismiss for failure to state a claim, filed August 10, 1990. Plaintiffs have filed a response and Continental Bank has filed a reply. The court held a hearing on this motion on September 19, 1990.

### I. *Background*

Plaintiffs Morton Scholnick and Stuart Freedman allege that in November 1985 they purchased interests in two limited partnerships: BRS Oil Associates 1985, L.P. ("BRS") and GMK Drilling Associates ("GMK"). Plaintiffs purchased these interests from defendant Inmark Securities Corporation and its agents, defendants Robert Schecter and his wife Bluma Schecter.

The complaint also names Continental Bank ("Continental" or "the bank"), a Pennsylvania corporation, as a defendant. According to the complaint, Continental

> was the principal lender to Sheldon S. Somerman, an individual who promoted

the oil drilling programs in which BRS Oil Associates 1985, L.P., GMK Drilling Associates and many other limited partnerships participated.

Complaint, para. 4. Somerman, in turn, is alleged to be

> the principal promoter and organizer of the drilling programs involved in this action, and was responsible for arranging the financing for the drilling programs and related drilling operations.

*Id.* para. 13(a). Somerman is not named as a defendant in this action, although the complaint does allege that he was "involved in the scheme."

The complaint alleges that Continental Bank provided the financing for many "Somerman companies" including Monroe Well Services, Inc. ("Monroe"). Both GMK and BRS had "turnkey drilling contracts" with Monroe, which was to drill the oil wells. In 1985, the bank allegedly

> realized that the Somerman companies would be unable to repay Continental's loans unless they could arrange to sell millions of dollars of additional limited partnership subscriptions in oil drilling programs, thereby generating turnkey drilling fees for Monroe's account.

*Id.* para. 15. The complaint further alleges that, in order to cover Monroe's loans, the bank and Somerman arranged a scheme

> whereby they agreed to apply the proceeds from partnership subscriptions to reduce outstanding loans owed to Continental. Over 90% of the money raised from subscriptions to each partnership was being paid over to Monroe as turnkey drilling fees, and was being deposited in Monroe's account at Continental. Pursuant to the scheme, Continental periodically took some or all of the partnership proceeds recently deposited in Monroe's account at Continental and applied those monies to outstanding loan balances of Monroe and other Somerman Companies.

*Id.* para. 16. In December 1985, the bank allegedly "swept Monroe's account for $13,770,990, an amount which completely satisfied the outstanding indebtedness of the Somerman Companies to Continental."

*Id.* para. 31. This "sweeping" of Monroe's account allegedly deprived Monroe of the money it needed to drill all of the wells called for in its contracts with the BRS and GMK partnerships. As a result, the partnerships acquired a "markedly inferior portfolio of wells." *Id.* para. 34.

Plaintiffs allege that the private placement memoranda failed to disclose, among other things, the fact that the partnership funds were being used to repay Monroe's loans with the bank. Nor was it disclosed that Monroe's account could be "swept" by the bank to satisfy Monroe's outstanding loans, thereby causing the funding of the drilling projects to be left subject, in effect, to Continental's discretion. Plaintiffs also allege that the private placement memoranduma affirmatively misrepresented the purpose of the offering by stating that investment proceeds would be used to pay drilling expenses, whereas in fact the money would be used to repay Monroe's debts to Continental. Plaintiffs allege that as a result of these statements and omissions, they did not know that their investments were insecure. Plaintiffs allege that they "would not have purchased [their partnership interests] had full disclosure been made." Complaint, para. 29.

Plaintiffs do not allege that Continental prepared or distributed any of the offering materials.[1] They do allege, however, that Continental "received copies of some or all of the offering materials" and that the bank "knew, or should in the absence of recklessness have known, what was and was not being disclosed to prospective limited partners." Complaint, para. 18. Specifically, plaintiffs allege that the bank knew or should have known that "investors were being misled into believing that the monies they paid would be used by Monroe pursuant to a 'turnkey' arrangement, to pay directly for well drilling when, in fact, those monies were being used to repay the Continental loans." *Id.* para. 21. Plaintiffs also allege that defendants knew or should have known

> that such facts were material and were being concealed from the investing public. They nonetheless caused, encouraged, permitted, substantially assisted or consciously intended to assist in, the offer and sale of the fraudulent drilling programs and the misuse of subscription proceeds in order to benefit themselves. Continental's superior knowledge came from its multiple roles as principal lender to Somerman and the Somerman Companies, as lender to some of the individual investors [2] and as escrow agent for many of the partnership offerings.

*Id.* para. 28.

In count I of their complaint plaintiffs assert a claim against Continental under section 10(b) of the Securities Exchange Act of 1934 [3] ("the 1934 Act"), and Rule 10b–5 of the Securities and Exchange Commission. Plaintiffs allege that Continental defrauded them; that it had actual knowledge of the fraud, or acted with reckless disregard of the fraud; that it participated in the fraud; and that it aided and abetted the fraudulent acts of Somerman and his companies. Complaint, para. 37–41.[4] In count II plaintiffs assert a claim for common law fraud.[5]

---

1. Plaintiffs allege that the private placement memoranda "were furnished to them by Schecter." Complaint, para. 27.

2. Plaintiffs Scholnick and Freedman do not allege that Continental loaned them money to invest in BRS or GMK, or for any other purpose.

3. Plaintiffs also assert in count I that Continental may be held liable under section 20 of the 1934 Act. Section 20, codified as 15 U.S.C. § 78t, deals with liability of "controlling persons." Since plaintiffs have abandoned their claim that Continental was a controlling person of Somerman or the Somerman companies, the court need not address section 20 as a basis for relief. *See* plaintiffs' response brief, p. 13.

4. In paragraph 41 of the complaint, plaintiffs also seek to hold Continental liable as a "controlling person" of Somerman and the Somerman companies, pursuant to section 20 of the 1934 Act, 15 U.S.C. § 78t. In their response to Continental's motion to dismiss, plaintiffs indicate that they are withdrawing this claim. *See* plaintiffs' response brief, p. 13.

5. In counts II and III plaintiffs also assert state law claims for conspiracy and conversion. Plaintiffs have abandoned these claims. *See* plaintiffs' response brief, p. 20.

## II. *Continental Bank's Motion to Dismiss*

■ Continental seeks dismissal of the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). In this motion, Continental argues that the complaint fails to state a claim as to the bank for primary or secondary liability under section 10(b) of the 1934 Act or Rule 10b–5. The bank's central argument is that it owed no duty to disclose anything to plaintiffs, since there was no fiduciary relationship between the bank and plaintiffs. Continental also argues that the allegations are insufficient to state a claim against it as an aider and abettor. Continental argues further that plaintiffs have failed to properly allege causation of their loss; that the claims under section 10(b) are time barred; that the allegations of fraud are not made with the particularity required by Fed.R.Civ.P. 9(b); and that the state law claim for fraud is not properly alleged.

## III. *Analysis*

### A.

In deciding a motion to dismiss for failure to state a claim,

> the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.; Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

*Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir.1987) (*en banc*). The court is not persuaded that plaintiffs' allegations vis-a-vis the bank would not, if proven, support a claim for which relief may be granted.

Section 10(b) of the 1934 Act, codified as 15 U.S.C. § 78j(b), states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> \* \* \* \* \* \*
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Securities and Exchange Commission Rule 10b–5, codified as 17 C.F.R. § 240.10b–5, states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

The 1934 Act sought " 'to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry.' " *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972), *quoting SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963). In examining its legislative history, the Supreme Court has found that section 10(b) was intended to be "a catchall clause to prevent fraudulent practices." *Chiarella v. United States*, 445 U.S. 222, 226, 100 S.Ct. 1108,

1113, 63 L.Ed.2d 348 (1980); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976). The Supreme Court has indicated that section 10(b) and Rule 10b–5 must "be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" *Affiliated Ute Citizens*, 406 U.S. at 151, 92 S.Ct. at 1471, *quoting Capital Gains Research Bureau*, 375 U.S. at 195, 84 S.Ct. at 284. *See also Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475–76, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977), *quoting Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

To state a claim for primary liability under section 10(b) and Rule 10b–5, the complaint must allege

> 1) the use of jurisdictional means 2) to implement a deceptive or manipulative practice (with the requisite scienter) 3) in connection with 4) the purchase or sale 5) of a security 6) causing 7) damages.

*Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1026 (6th Cir.1979), *quoted in M & B Contracting Corp. v. Dale*, 795 F.2d 531, 536 (6th Cir.1986). "A person undertaking to furnish information which contains a material misstatement or omission is a primary participant, so long as he or she is not so far removed from the transmission of the misleading information that liability would necessarily become vicarious." *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.*, 713 F.Supp. 1019, 1025 (W.D. Mich.1989), *citing SEC v. Washington County Utility District*, 676 F.2d 218, 223–24 (6th Cir.1982). A defendant may not be held primarily liable absent a showing of "direct participation in the deceit at issue." *Mercer*, 713 F.Supp. at 1025, *citing Moore v. Fenex, Inc.*, 809 F.2d 297, 305 (6th Cir. 1987).

A defendant may also be held secondarily liable as an "aider and abettor" of a violation of section 10(b) or Rule 10b–5 if ... "some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation."

*Moore v. Fenex, Inc.*, 809 F.2d 297, 303 (6th Cir.1987),[6] (*quoting Washington County Utility District*, 676 F.2d at 224), *cert. denied sub nom. Moore v. Frost*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987).

Finally, conduct violates section 10(b) or Rule 10b–5, whether primarily or secondarily, only if it "can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Santa Fe Industries*, 430 U.S. at 474, 97 S.Ct. at 1301. The terms manipulative and deceptive "clearly connote[] intentional misconduct." *Hochfelder*, 425 U.S. at 201, 96 S.Ct. at 1385. *See also* n. 6, *supra*. Such misconduct must take the form of "deception, misrepresentation, or nondisclosure" to violate section 10(b) or Rule 10b–5. *Santa Fe Industries*, 430 U.S. at 476, 97 S.Ct. at 1302.

As noted above, the court must take plaintiffs' allegations as true in deciding the instant motion. Viewing the allegations vis-a-vis the bank in this light, and drawing all reasonable inferences in plaintiffs' favor, the court is not convinced "beyond a doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Nishiyama*, 814 F.2d at 279.

Plaintiffs allege that they invested in BRS and GMK believing that their investment money would go to Monroe to finance the drilling of oil wells. Unbeknownst to plaintiffs, Monroe's principal, Somerman,

---

**6.** The *Fenex* court went on to state:

> As to the third requirement [regarding knowing and substantial assistance in the violation], the analysis required by this factor must be particularly exacting in cases involving non-disclosure. *Washington County*, 676 F.2d at 226. The plaintiffs must show that the silence of the accused aider and abettor 'was consciously intended to aid the securities law violation,' and must prove either a culpable state of mind, or conduct from which a culpable state of mind can be inferred. *Id.*

809 F.2d at 303–304. This caveat comports with the Supreme Court's holding that section 10(b) prohibits only securities law violations committed with scienter. *See Santa Fe Industries*, 430 U.S. at 473, 97 S.Ct. at 1300; *Hochfelder*, 425 U.S. at 206, 96 S.Ct. at 1387.

deposited their investment money into an account at Continental in order to repay loans which the Somerman companies had with Continental. According to the complaint, the bank knew where this money was coming from and specifically agreed with Somerman to use plaintiffs' investment proceeds in this way. Plaintiffs further allege that

> throughout 1985, Continental made additional loans to the Somerman Companies to enable them to continue operating. This perpetuated the illusion that their operations were viable and that partnership proceeds were in fact being used for drilling as the partnership offering materials had represented. By propping up these companies, Continental also bought Monroe sufficient time to obtain additional monies from new limited partners to pay off the Continental loans.

Complaint, para. 19.

The court is satisfied that these allegations are sufficient to implicate Continental as either a primary or secondary violator of section 10(b) under the case law outlined above. On an appropriate showing of proof, a jury might reasonably conclude that the agreement between Somerman and Continental was a deceptive or manipulative scheme, and that Continental participated directly in the scheme and/or substantially assisted in defrauding plaintiffs.

### B.

■ Continental argues that it may not be held liable for failing to disclose to plaintiffs its arrangement with Somerman because it had no legally enforceable duty to do so. It is now well established that a person has no duty to disclose market information to buyers or sellers of securities "absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other." *Jett v. Sunderman*, 840 F.2d 1487, 1493 (9th Cir.1988), *citing Chiarella v. United States*, 445 U.S. 222, 232, 100 S.Ct. 1108, 1116, 63 L.Ed.2d 348 (1980).[7] *See also Dirks v. SEC*, 463 U.S. 646, 654–55, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir.1989); *Leoni v. Rogers*, 719 F.Supp. 555, 565 (E.D. Mich.1989).

Continental argues that the complaint in the present case does not allege facts which would support a finding that the bank owed plaintiffs a duty to disclose its arrangement with Somerman and the Monroe companies. Although plaintiffs do not point this out in their response brief, paragraph 28 of the complaint alleges that Continental was the "escrow agent for many of the partnership offerings." An argument might be made that Continental was an escrow agent of BRS or GMK, and that the bank therefore owed plaintiffs a fiduciary duty to disclose its arrangement with the Somerman companies. *See, e.g., Aberbach v. Wekiva Associates, Ltd.*, 735 F.Supp. 1032, 1035 (S.D.Fla.1990) (denying defen-

---

**7.** In *Chiarella*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), the Supreme Court reversed the criminal conviction of a printer who learned of corporate takeover bids before they were announced publicly. Chiarella had bought securities in the target companies shortly before the announcements were made, and later sold them at a profit. The Supreme Court held that defendant had not violated section 10(b) by failing to disclose this non-public information because he owed no duty to the sellers of the securities to disclose this information. The court stated:

> [O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." ...
>
> \* \* \* \* \* \*
>
> [S]ilence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b) ... But such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction.
>
> \* \* \* \* \* \*
>
> Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud. When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak. We hold that a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information.

445 U.S. at 228, 230, 235, 100 S.Ct. at 1114, 1115, 1118.

dant bank's Rule 12(b)(6) motion to dismiss where plaintiffs alleged the bank was an escrow holder). If plaintiffs intend to pursue this theory of liability, they should amend the complaint to properly allege it.[8] The court presently is not satisfied that such a claim is insupportable.

Even if the bank is not liable under Rule 10b–5(b) for failure to disclose, it may still be held liable under Rule 10b–5(a) and 10b–5(c) as a participant in the allegedly fraudulent scheme. *See Affiliated ITE Citizens, supra,* 406 U.S. at 152–153, 92 S.Ct. at 1471–72 (noting that while subparagraph (b) prohibits material misstatements and omissions, subparagraphs (a) and (c) "are not so restricted"). These sections of the rule prohibit any person from employing a fraudulent scheme or from "engag[ing] in any act, practice, or course of business which operates ... as a fraud or deceit upon any person." The allegations of the complaint suffice to state a claim against the bank under these subparagraphs of the Rule. Plaintiffs allege that the bank was directly and actively involved in a scheme whereby their investment proceeds were used to repay loans that the Somerman companies had taken out with Continental. The complaint also sufficiently alleges that Continental knew it was playing a significant role in furthering a fraudulent scheme. The bank may therefore be held both primarily and secondarily liable under section 10(b), as interpreted by Rule 10b–5(a) and 10b–5(c).[9]

**8.** Plaintiffs must do so within ten (10) days of the date of this opinion. If they do not do so, the court will entertain a renewed motion to dismiss the complaint insofar as it seeks to hold the bank liable pursuant to Rule 10b–5(b).

**9.** Plaintiffs' allegations that Continental was directly involved in perpetrating a fraudulent scheme distinguish this case from those cited by Continental for the proposition that a bank does not violate section 10(b) by engaging in a "routine commercial financing transaction." *Jett v. Sunderman,* 840 F.2d 1487, 1493 (9th Cir.1988). *See also Schlifke v. Seafirst Corp.,* 866 F.2d 935, 946 (7th Cir.1989) (affirming a grant of summary judgment for a bank which "merely drafted loan documents and established requirements to ensure its interests as a lender"); *Bane v. Sig-*

## C.

■ Continental next argues that the complaint should be dismissed because it fails adequately to allege "loss causation." In *Bastian v. Petren Resources Corp.,* 892 F.2d 680, 683–85 (7th Cir.1990), *cert. denied* — U.S. ——, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), the court stated:

> what securities lawyers call "loss causation" is the standard common law fraud rule ... merely borrowed for use in federal securities fraud cases. It is more fundamental still; it is an instance of the common law's universal requirement that the tort plaintiff prove causation....
>
> \*   \*   \*   \*   \*   \*
>
> The plaintiffs alleged that they invested in the defendants' limited partnerships because of the defendants' misrepresentation, and that their investment was wiped out. But they suggest no reason *why* the investment was wiped out. They have alleged the cause of their entering into the transaction in which they lost money but not the cause of the transaction's turning out to be a losing one.
>
> \*   \*   \*   \*   \*   \*
>
> If the alternative oil and gas limited partnerships to which these plaintiffs would have turned had the defendants leveled with them were also doomed, despite competent and honest management, to become worthless, the plaintiffs were not hurt by the fraud; it affected the place but not the time or amount of their loss.
>
> \*   \*   \*   \*   \*   \*

*mundr Exploration Corp.,* 848 F.2d 579, 582 (5th Cir.1988) (affirming a grant of summary judgment for a bank where plaintiffs failed to produce evidence to show that the bank did anything more than engage in "routine or typical banking practices"). As noted by the court in *Aberbach v. Wekiva Associates, Ltd.,* 735 F.Supp. 1032, 1035 (S.D.Fla.1990), a case cited in Continental's brief, a bank "can be liable [under section 10(b)] if it acted as something more than a lender." *See also Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Davis v. Avco Financial Services, Inc.,* 739 F.2d 1057 (6th Cir.1984). The complaint adequately alleges that Continental did not act merely as a lender, but participated directly in a fraudulent scheme.

If the plaintiffs would have lost their investment regardless of the fraud, any award of damages to them would be a windfall.

\* \* \* \* \* \*

"Loss causation" is an exotic name ... for the standard rule of tort law that the plaintiff must allege and prove that, but for the defendant's wrongdoing, the plaintiff would not have incurred the harm of which he complains.

Plaintiffs acknowledge they must allege that defendants' fraudulent statements and omissions caused their loss. Plaintiffs note, however, that such allegations need not be made "in any great detail." *Beres v. Thomson McKinnon Securities, Inc.,* Fed.Sec.L.Rep. (CCH) para. 94,923, 1989 WL 105967 (S.D.N.Y. Sept. 1, 1989), *citing Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.,* 630 F.Supp. 972, 979 (S.D.N.Y.1986). *See also Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (noting that loss causation "is demonstrated rather easily by proof of some form of economic damage").

In the present case, plaintiffs assert that they would not have invested in BRS and GMK if defendants had revealed the alleged scheme between the bank and the Somerman companies (complaint, para. 29). Plaintiffs also assert that they lost their money because Continental swept Monroe's account (complaint, para. 31). According to the complaint, "Continental's actions halved the time for Monroe to site, equip and complete the wells, thus contributing to the acquisition and development of a markedly inferior portfolio of wells" and Monroe "did not complete the performance it had agreed to complete [in] its turnkey drilling contracts" (complaint, para. 34). The court is satisfied that these averments sufficiently allege loss causation.

### D.

■ Continental next argues that the complaint should be dismissed because plaintiffs' federal claims are time barred. Continental urges the court to follow *In re*

*Data Access Systems Securities Litigation,* 843 F.2d 1537 (3rd Cir.1988) (*en banc*), *cert. denied sub nom. Vitiello v. Kaklowsky & Co.,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), which held that all section 10(b) claims are subject to a one-year limitations period.

The court has carefully studied the Third Circuit's *en banc* decision in *In re Data Access.* This opinion is persuasive authority for the proposition that all section 10(b) actions should be governed by a single limitations period, and that this period should be borrowed from the limitations period prescribed by analogous provisions of the federal securities laws.

Nonetheless, this court is bound by decisions of the Sixth Circuit Court of Appeals. Continental fails to note in its brief that in *IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 344 (6th Cir.1976), the court applied the six-year limitations period of [M.C.L.A. § 600.5813] M.S.A. § 27A.5813 (the period applicable to common law fraud actions) to federal securities claims brought in Michigan. *IDS Progressive Fund* has not been overruled. To the contrary, this case has subsequently been reaffirmed on a number of occasions, *see, e.g., Roney & Company v. Goren,* 875 F.2d 1218, 1223 (6th Cir.1989); *Campbell v. Upjohn Company,* 676 F.2d 1122, 1126 n. 4 (6th Cir.1982); *Herm v. Stafford,* 663 F.2d 669, 678 n. 10 (6th Cir.1981), and therefore continues to state the law in this circuit. Whatever merit the Third Circuit's recent decision may have, "[t]his court is powerless to adopt the *Data Access* doctrine so long as ... the Sixth ... Circuit adhere[s] to the contrary view." *McInnis v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 706 F.Supp. 1355, 1357 n. 5 (M.D.Tenn.1989). *See also Mercer,* 713 F.Supp. at 1026–27 (noting that "[t]he six year ... rule ... has been the settled law in this circuit for twenty-two years" and "declin[ing] the invitation to follow *Data Access* "). Consequently, the court must reject Continental's argument that this action is time-barred.

### E.

■ Continental next argues that the complaint fails to plead fraud with the par-

ticularity required by Fed.R.Civ.P. 9(b). This rule states: "In all averments of fraud or mistake, the circumstances constituting the fraud shall be stated with particularity. ..." In *Michaels Building Co. v. Ameritrust Co. N.A.,* 848 F.2d 674, 679–80 (6th Cir.1988), the court found Rule 9(b) to be satisfied where the complaint identified "the participants in the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud." *See also Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984) ("To satisfy FRCP 9(b), a plaintiff must at minimum allege the time, place and contents of the misrepresentation(s) upon which he relied"); *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 591 (E.D.Mich.1985) ("the complaint must describe the conduct that constitutes fraud with some specificity"); *Benoay v. Decker,* 517 F.Supp. 490, 493 (E.D.Mich.1981), *aff'd* 735 F.2d 1363 (6th Cir.1984) ("each individual defendant must be appraised separately of the specific acts of which he is accused").

The court has reviewed the complaint and is satisfied that it comports with the specificity requirement of Rule 9(b). Continental argues that the complaint makes only general allegations of a "scheme" entered into by the bank and the Somerman companies. This is not a fair reading of the complaint. Plaintiffs allege when the bank entered into the fraudulent scheme, who participated, why these parties made such an arrangement, and how and when it was carried out. These allegations fully suffice to put Continental on notice as to the contours of plaintiffs' fraud claim. *See Mercer,* 713 F.Supp. at 1026 (denying defendants' motion to dismiss on Rule 9(b) grounds because the allegations in the complaint "amount to more than a bare legal

conclusion" and gave defendants "fair notice" of the fraud claim).

Furthermore, just as in *Mercer,* "discovery ha[d] not yet begun" at the time the bank filed the instant motion to dismiss. 713 F.Supp. at 1026. The court agrees with Judge Hillman's statement that

> it would be unfair to dismiss plaintiffs' complaint[ ] without providing them the opportunity to flesh out their claims. If it appears during the course of discovery that plaintiffs cannot prove their 10b–5 claims, the court will entertain a timely summary judgment motion.

*Id.*

### F.

Finally, Continental argues that plaintiffs have failed to allege all of the elements of a common law fraud claim. Citing *McMullen v. Joldersma,* 174 Mich.App. 207, 435 N.W.2d 428 (1988), Continental asserts that plaintiffs must allege that it made a material, false representation. Continental acknowledges that this element may be satisfied by alleging that the defendant failed to divulge a fact, *see, e.g., McMullen,* 174 Mich.App. at 213, 435 N.W.2d 428, *citing Jaffa v. Shacket,* 114 Mich.App. 626, 640–41, 319 N.W.2d 604 (1982),[10] but argues that there can be no liability where there is no duty to disclose. Continental reiterates the argument made previously in its brief that it had no duty to disclose any information to plaintiffs in this case.

As noted above, plaintiffs allege that Continental was "the escrow agent for many of the partnership offerings." Plaintiffs may be able to establish that the bank, as an escrow agent, owed them a fiduciary duty to disclose its alleged scheme with the Somerman companies. No other potential fiduciary relationship is alleged in the complaint. If plaintiffs intend to pursue this theory of liability, they must amend the complaint to make the necessary specific

---

**10.** In *Jaffa,* the court stated:
The false material representation needed to establish fraud may be satisfied by the failure to divulge a fact or facts the defendant has a

duty to disclose. Such an action is one of fraudulent concealment.
174 Mich.App. at 213, 435 N.W.2d 428.

allegations.[11] The court is not satisfied at this juncture that such a claim is insupportable.[12]

## IV. *Conclusion*

For the reasons stated above,

IT IS ORDERED that defendant Continental Bank's motion to dismiss is granted as to plaintiffs' claims (1) that Continental is liable as a "controlling person" (complaint, para. 41), (2) of common law conspiracy (complaint, para. 47), and (3) of common law conversion (complaint, para. 49–50), plaintiffs having voluntarily abandoned these claims.

IT IS FURTHER ORDERED that defendant Continental Bank's motion to dismiss is denied as to all else.

SO ORDERED.

---

**11.** Plaintiffs must do so within ten (10) days of the date of this opinion. If they do not do so, the court will entertain a renewed motion to dismiss the complaint insofar as it seeks to hold the bank liable on a common law fraud theory.

**12.** Continental has not cited any case authority to support its contention that it had no duty under Michigan law to make this disclosure. In *Simmons v. Telcom Credit Union*, 177 Mich.App. 636, 642, 442 N.W.2d 739 (1989), cited at page 17 of Continental's brief, the court simply stated that "suppression of information may constitute silent fraud when there is a legal or equitable duty of disclosure." *Simmons* does not suggest that Continental had no such duty toward plaintiffs in this case.