**Jane DOE and Infant Doe by her Next Friend John Smith, Plaintiffs,**

v.

**Earvin JOHNSON, Jr., Defendant.**

**No. 5:92:CV:125.**

United States District Court, W.D. Michigan.

Feb. 18, 1993.

Webb A. Smith, Theodore W. Swift, Michael J. Bommarito, Foster, Swift, Collins & Smith, PC; Nan Elizabeth Casey, Reynolds & Guyselman, PC, Lansing, MI, for plaintiffs Jane Doe, Infant Doe and John W. Smith.

James S. Brady, Stephen R. Ryan, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for intervenor Grand Rapids Press.

Stuart J. Dunnings, Jr., Dunnings & Frawley, PC, Lansing, MI, Howard L. Weitzman, Karen Randall, David Phillip Kaplan, Michele Monique Desoer, Katten, Muchin, Zavis & Weitzman, Los Angeles, CA, for defendants Richard Roe, Earvin Johnson, Jr.

Leonard M. Niehoff, James E. Stewart, Butzel Long, Detroit, MI, for movant The Detroit News.

Harry Contos, Jr., Harry Contos, Jr., PC, Kalamazoo, MI, for movant The Kalamazoo Gazette.

Herschel P. Fink, Michael A. Gruskin, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for intervenor Detroit Free Press.

## OPINION

ENSLEN, District Judge.

This case is before the Court on defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for a more definite statement under Rule 12(e). Additionally, defendant asks the Court to strike specified portions of the Complaint under Rule 12(f). Plaintiffs' Complaint states eight causes of action against defendant. Although these claims are not identified by name in the Complaint, in their response to the defendant's motions, plaintiffs state that the counts are as follows: (I) Negligence; (II) Breach of duty not to transmit HIV virus; (III) Battery; (IV) Fraud/Failure to warn (of HIV status); (V) Fraud/Failure to warn (of sexually active lifestyle); (VI) Strict liability; (VII) Loss of consortium (Infant Doe); and (VIII) inten-

tional infliction of emotional distress. Plaintiffs' Brief at 2.

Defendant has moved for dismissal of six of these counts (I, III–VI, and VIII). Defendant asserts, for a number of reasons, that plaintiffs have failed to state a claim under Rule 12(b)(6) with respect to these counts. Alternatively, defendant argues that if this Court does not dismiss some or all of these counts, I should order plaintiffs to supply a more definite statement under Rule 12(e) because plaintiffs' Complaint is unclear. Finally, if I rule against defendant on his Rule 12(b)(6) motion, defendant argues that the Court should strike all references in plaintiffs' Complaint to the terms, "promiscuous," "sexually active," or "multiple partner" as used to describe defendant's lifestyle. Defendant alleges that these references are not relevant to this lawsuit and should be stricken pursuant to Rule 12(f).

### Facts

This case raises unique legal and policy issues, but has fairly straight forward facts. Plaintiff, Jane Doe, alleges that defendant, Earvin Johnson, Jr., wrongfully transmitted the human immunodeficiency virus ("HIV virus") to her through consensual sexual contact. Ms. Doe alleges that the wrongful transmission of the HIV virus occurred on or about the evening of June 22, 1990, or the morning of June 23, 1990, or both, at her home in Ingham County, Michigan. Plaintiffs' Complaint at 3–4. Ms. Doe and Mr. Johnson had "sexual contact" which allegedly led to the transmission of the HIV virus. Ms. Doe alleges that immediately prior to the encounter, she asked Mr. Johnson to use a condom. Mr. Johnson allegedly refused to do so. Nonetheless, Ms. Doe engaged in consensual sexual contact with Mr. Johnson. *Id.* at 4.

Prior to the evening of June 22, 1990 or morning of June 23, 1990, Ms. Doe claims that Mr. Johnson "was sexually active, having sexual contact and engaging in sexual intercourse with multiple partners." *Id.* at 3. Thus, Ms. Doe claims that Mr. Johnson "knew or should have known" that he had a high risk of becoming infected with the HIV virus because of his "sexually active, promis-

cuous lifestyle." *Id.* Accordingly, Ms. Doe argues that Mr. Johnson should have (1) warned her about his past lifestyle; (2) informed her that he "may have HIV"; (3) informed her that he did in fact "have HIV"; (4) not engaged in sexual contact with her; or (5) used a condom or other method to protect her from the HIV virus.

As a result of this wrongful transmission, Ms. Doe states that she suffers, and will continue to suffer, many consequences including physical illness, severe emotional distress, loss of enjoyment of life, extreme embarrassment, humiliation, shame, medical expenses, and lost wages and benefits. *Id.* at 5. Moreover, Ms. Doe notes that she will eventually develop acquired immunodeficiency syndrome ("AIDS") and "suffer a slow, certain, and painful death." *Id.*

## MOTION TO DISMISS

### Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). Technically, of course, the 12(b)(6) motion does not attack the merits of the case. It merely challenges the pleader's failure to state a claim properly. 5A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (Supp.1990). In deciding a 12(b)(6) motion, the court must determine whether plaintiffs' Complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the Complaint at "face value" and construe them in the light most favorable to plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1034–35 (6th Cir.1979).

The Complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495

F.Supp. 822, 827 (E.D.Mich.1980). The court cannot dismiss plaintiffs' Complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermillion Foam Prods. Co. v. Gen. Elec. Co.*, 386 F.Supp. 255 (E.D.Mich.1974).

## DISCUSSION

### Negligent Transmission (count I) Fraud—Failure to Warn of HIV status (count IV) Fraud—Failure to Warn of "Sexually Active Lifestyle" (count V)

In his motion to dismiss, defendant groups counts I, IV and V together for purposes of his first argument because he attacks each count on essentially the same ground: that defendant must have had "knowledge" of his HIV-positive status in order to have a duty under negligence or fraud (failure to warn) theories.

■ Count I of the Complaint alleges that defendant negligently breached a legal duty he owed to plaintiff Jane Doe not to transmit the HIV virus to her because he knew or should have known that he had the HIV virus. In order to state a claim for a cause of action arising from a tortious injury in the state of Michigan,[1] such as that alleged by plaintiff Jane Doe in count I, a litigant must allege: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) causation (proximate and causation in fact) between the breach of the duty and the injury; and (4) resultant damages. *Lorencz v. Ford Motor*, 439 Mich. 370, 375, 483 N.W.2d 844 (1992).

1. As the parties correctly point out, because the jurisdiction of this Court is founded upon diversity of citizenship between the parties, Michigan state law governs the claims raised in the Complaint. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. I note that, under a negligence action, the issue whether a legal duty exists and the question of

■ Defendant argues that count I of plaintiffs' Complaint should be dismissed because he did not owe a legal duty to plaintiff Jane Doe. Generally, as is noted by the parties, in Michigan the "duty" or "standard of care" imposed on every person, in every situation, is that of a "reasonably prudent person." *Massey v. Scripter*, 401 Mich. 385, 390, 258 N.W.2d 44 (1977); *see also Clark v. Dalman*, 379 Mich. 251, 261, 150 N.W.2d 755 (1967) (a legal duty under negligence "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others.") That is, a defendant must always do or refrain from doing what a reasonably prudent person would do or refrain from doing. *Massey*, 401 Mich. at 390, 258 N.W.2d 44. However, if the Court finds that a duty does not exist in a given situation, then, of course, a defendant has no obligation to act in accordance with the "reasonably prudent person" standard with respect to the alleged conduct by a plaintiff. The question whether a duty exists is a legal one for the court to decide. *Moning v. Alfono*, 400 Mich. 425, 436–37, 254 N.W.2d 759 (1977).[2] In Michigan, courts consider a number of factors to determine the existence of a legal duty. For instance, in *Swartz v. Huffmaster Alarms*, 145 Mich.App. 431, 434, 377 N.W.2d 393 (1985), the Michigan Court of Appeals stated: "The determination of whether a duty should be imposed upon a defendant is based on a balancing of the societal interest involved, the severity of the risk, the burden upon the defendant [to meet the duty], the likelihood of occurrence and the relationship between the parties." *See also Bondie v. Bic Corp.*, 739 F.Supp. 346, 348 (E.D.Mich.1990) (citing same factors); *Lewin v. McCreight*, 655 F.Supp. 282, 284 (E.D.Mich.1987) (same); *Rodriguez v. Sportsmen's Cong.*, 159 Mich. App. 265, 271, 406 N.W.2d 207 (1987) (same).

proximate cause often merge. *See, e.g., Johnson v. Bobbie's Store*, 189 Mich.App. 652, 659–60, 473 N.W.2d 796 (1991) ("[t]he questions of duty and proximate cause are interrelated because they both involve a policy determination of whether a legal obligation should be imposed on the defendant to protect the plaintiff against the damage the plaintiff actually suffered.").

Similarly, courts in other jurisdictions weigh a number of factors in determining whether a duty on the part of the defendant exists. These factors include:

(1) Foreseeability of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame attached to defendant's conduct; (5) policy of preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for the breach; and (7) availability, costs, and prevalence of insurance for the risk involved.

*Vu v. Singer, Co.,* 538 F.Supp. 26, 29 (N.D.Cal.1981), *aff'd,* 706 F.2d 1027 (9th Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 350, 78 L.Ed.2d 315 (1983).

Additionally, as is somewhat obvious from these factors, courts often consider public policy implications in making a determination whether a legal duty exists in any given situation. *See, e.g., Moore v. St. Joseph Nursing Home, Inc.,* 184 Mich.App. 766, 767–68, 459 N.W.2d 100 (1990) ("In attempting to determine whether a defendant owes an actionable duty to a plaintiff as a matter of law, it is necessary to assess competing policy considerations for and against recognizing the asserted duty."); *Marr v. Yousif,* 167 Mich.App. 358, 361, 422 N.W.2d 4 (1988) ("courts must [ ] assess the competing public policy considerations for and against recognizing the asserted duty in any individual case."). Finally, I note that a court can find that a duty arises "specifically by mandate of statute, or it may arise generally by operation of law under application of the basic common law." *Clark,* 379 Mich. at 261, 150 N.W.2d 755.

Count IV of the Complaint alleges that defendant committed fraud by failing to inform plaintiff Jane Doe that he was infected with the HIV virus (because he knew or should have known he had the HIV virus). Similarly, count V alleges that defendant committed fraud by failing to inform plaintiff Jane Doe that he lived a "promiscuous" and "sexually active" lifestyle that put him at risk for acquiring the HIV virus. To successfully

state a claim for fraud under Michigan law, a plaintiff must allege that: (1) the defendant made a false material representation; (2) the defendant knew the representation was false, or made it recklessly without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely upon the representation; (4) the plaintiff did, in fact, act in reliance upon the representation; and (5) the plaintiff was injured. *McMullen v. Joldersma,* 174 Mich.App. 207, 213, 435 N.W.2d 428 (1988). The first element of fraud may be satisfied by showing that the defendant had a duty to disclose facts, but suppressed them instead. *Id.* at 213, 435 N.W.2d 428; *U.S.F. & G. v. Black,* 412 Mich. 99, 125, 313 N.W.2d 77 (1981).

Defendant argues that counts IV and V of plaintiffs' Complaint should be dismissed to the extent these counts are not based on defendant's actual knowledge of infection, or symptoms of the disease. More specifically, defendant asserts that he did not have a duty to make disclosures about his past "sexual[ly] active" lifestyle that "put him at high risk" to contract the HIV virus.

Thus, the common denominator in defendant's first argument addressing counts I, IV and V is that he did not owe a duty to plaintiff Jane Doe. Specifically, Mr. Johnson argues that he cannot be held liable (did not have a "duty") under these counts unless he actually "knew that he was infected with the HIV virus." Defendant's Brief at 6. In his Reply Brief, however, defendant enhances his potential duty by arguing that he had a duty to plaintiff Jane Doe on these theories if she can show that (1) he "knew he was infected (with the HIV virus) or (2) knew he had symptoms (of the HIV virus)." Defendant's Reply Brief at 1 & 3. Thus, defendant apparently concedes that actual knowledge of the disease is not absolutely necessary to have a "duty" to plaintiff Jane Doe for wrongful transmission of the HIV virus under negligence or fraud theories.

Plaintiffs, on the other hand, argue that they have stated a valid claim for transmission of the HIV virus under both negligence and fraud theories because either Mr. Johnson knew or "should have known" that he was infected with the HIV virus. According-

ly, since he allegedly knew or should have known that he was infected with the virus, he had a duty to refrain from having unprotected sexual relations with Ms. Doe. While not directly addressing the knowledge issue (e.g., at what level of "knowledge" does a duty "kick in"), plaintiffs appear to suggest that because defendant was "sexually active," "promiscuous" and engaged in sexual contact "with multiple partners," he "should have known" that he carried (or likely carried) the HIV virus. Thus, plaintiffs argue that the level of knowledge required in order to have a legal duty to another person is quite low— if one engages in "high risk" behavior,[3] such as engaging in a great deal of unprotected sex with multiple partners, then that individual has sufficient knowledge that s/he may have the HIV virus. Accordingly, in such a case, plaintiffs argue that the potential tortfeasor has a duty under the law of negligence to act as a "reasonably prudent person under the circumstances" and presumably to not engage in unprotected sexual relations, or at least warn a potential partner of the possibility that s/he may have the HIV virus.

As stated above, courts consider many factors in making a determination whether defendant has a duty to plaintiff for purposes of negligence. I believe that a court can make similar considerations when deciding whether a defendant has a duty to disclose facts about himself or herself under a fraud claim. *Cf. Zaschak v. Traverse Corp.*, 123 Mich.App. 126, 129, 333 N.W.2d 191 (in order to state a claim for fraud, plaintiff must "set forth facts [in the Complaint] supporting the allegation that [defendant] had a duty to disclose ..."). In this case, the most difficult issue for purposes of this motion to dismiss is foreseeability of harm to plaintiff Jane Doe.[4] That is: (1) *did* defendant foresee the harm to plaintiff Jane Doe; (2) *could* he foresee the harm; (3) *should* he have foreseen the harm to plaintiff Jane Doe; (4) what should defendant be required to have foreseen? The difficulty in phrasing the issue illustrates the uniqueness of this case.

Nonetheless, no matter how the issue is phrased, the Court believes that the key inquiry in this case is: at what level of knowledge of the HIV virus should a defendant foresee potential harm to a plaintiff such that s/he acquires a duty to act as a "reasonably prudent person," as well as to disclose his/her knowledge of the HIV virus to that plaintiff. Certainly, levels of knowledge of the HIV virus are wide-ranging. For example:

1) A defendant knows s/he has the HIV virus because s/he has been affirmatively diagnosed by a medical professional as having the disease;

2) A defendant knows that s/he has the HIV virus because s/he has specific knowledge of any particular fact, such as:

a) The defendant has experienced symptoms related to the HIV virus; or,

b) The defendant has come in contact with an individual, or several individuals, who have been diagnosed as having the HIV virus and defendant has engaged in conduct with such persons which results in a likelihood (or even a possibility) that s/he could have the disease because of such conduct;

3) A defendant has engaged in "high risk" conduct which may result in exposure to the HIV virus, such as a great deal of unprotected sexual contact with multiple partners; unprotected anal intercourse with multiple partners; shared needles with many individuals while using intravenous drugs; or, several blood transfusions.

4) A defendant has engaged in conduct which may result in exposure to the HIV virus, such as unprotected sexual rela-

---

**3.** For a discussion of "high risk" behavior and "high risk" groups *see infra* pp. 1390–91.

**4.** I note that when considering the issue whether a legal duty exists, a number of courts have determined that the question of foreseeability is significant. *See, e.g., Etter v. Michigan Bell Tele. Co.*, 179 Mich.App. 551, 556, 446 N.W.2d 500

(1989) ("The question of whether a duty exists depends in part on foreseeability: whether it was foreseeable that a defendant's conduct may create a risk of harm to another person and whether the result of that conduct and intervening causes was foreseeable."); *see also Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

tions with one partner (who had unprotected sexual relations with at least one other person).

■ Thus, the Court must determine at what level of knowledge a defendant owes a legal duty to a plaintiff such that negligence and fraud causes of action can be maintained. Several courts and commentators have addressed this issue—all coming to slightly different conclusions. At the outset, I must note that it is clear to this Court causes of action based on negligent transmission of an infectious disease, as well as failure to disclose a disease (fraud) are cognizable under the law. *Earle v. Kuklo,* 26 N.J.Super. 471, 98 A.2d 107 (1953) (tuberculosis); *Kliegel v. Aitken,* 94 Wis. 432, 69 N.W. 67 (1896) (typhoid fever); *Smith v. Baker,* 20 F. 709 (S.D.N.Y.1884) (whooping cough); *Gilbert v. Hoffman,* 66 Iowa 205, 23 N.W. 632 (1885) (smallpox); *Franklin v. Butcher,* 144 Mo. App. 660, 129 S.W. 428 (1910) (smallpox); *Hendricks v. Butcher,* 144 Mo.App. 671, 129 S.W. 431 (1910) (smallpox).

■ Moreover, it is clear to the Court that a plaintiff may maintain negligence and fraud claims based on wrongful transmission of venereal diseases, including genital herpes. *State v. Lankford,* 29 Del. 594, 102 A. 63 (1917) (venereal disease); *Crowell v. Crowell,* 180 N.C. 516, 105 S.E. 206 (1920) (venereal disease); *Kathleen K. v. Robert B.,* 198 Cal. Rptr. 273, 150 Cal.App.3d 992 (1984) (herpes); *Long v. Adams,* 175 Ga.App. 538, 333 S.E.2d 852 (1985) (herpes). Because there is very little law on the issue of transmission of the HIV virus, I will have to rely, in part, on the cases that address the transmission of other diseases, as well as seemingly unrelated areas of law, such as property law. I will make reference to these other areas of law because of shared legal principles such as foreseeability or duty to warn. Any reference to such diverse areas of law is in no way meant to minimize the dramatic issues associated with the HIV virus.

Additionally, as the parties note, because the question of tort liability for the transmission of sexually communicable disease is one of first impression in the state of Michigan, I will rely on decisions from courts in other states.

Both parties agree that a defendant's actual knowledge that s/he is infected with an infectious disease is sufficient to establish a duty for purposes of negligence and fraud. A number of courts across the country have also reached this conclusion. *Mussivand v. David,* 45 Ohio St.3d 314, 544 N.E.2d 265 (1988); *B.N. v. K.K.,* 312 Md. 135, 538 A.2d 1175, 1179 (1988); *R.A.P. v. B.J.P.,* 428 N.W.2d 103, 105–06 (Minn.Ct.App.1988); *Maharam v. Maharam,* 123 A.D.2d 165, 510 N.Y.S.2d 104 (1986); *Long v. Adams,* 175 Ga.App. 538, 333 S.E.2d 852 (1985).

Additionally, at least one court has held that where a defendant had knowledge of *symptoms* of an infectious disease, he was under a duty to warn the plaintiff of his symptoms—and the possibility that he may have the sexually transmitted disease. *M.M.D. v. B.L.G.,* 467 N.W.2d 645 (Minn.Ct. App.1991). In *M.M.D.,* the defendant contended that he did not know that he had herpes. Accordingly, defendant argued that he did not have a duty to inform plaintiff of the possibility that he may have herpes. Defendant conceded, however, that he did have recurring genital sores prior to and during the time when he engaged in sexual contact with plaintiff. *Id.* at 646. Moreover, defendant acknowledged that a medical professional informed him that a herpes culture (to determine whether he was infected) "may be" advisable. *Id.* The Minnesota Court of Appeals found that defendant did have a duty to disclose to plaintiff the possibility that he may have been infected with herpes despite his lack of actual knowledge of this fact. *Id.* In so holding, the court stated:

> Knowledge of facts giving rise to a duty may be imputed. Perception and experience bear on whether a person will be charged with knowledge. A key factor courts consider in determining whether a legal duty exists is whether the potential injury was a reasonably foreseeable consequence of the defendant's actions.

*Id.* (citations omitted).[5]

Moreover, at least one court has indicated, in dicta, that a defendant may be under a

---

**5.** *But see C.A.U. v. R.L.,* 438 N.W.2d 441, 444 (Minn.Ct.App.1989) (defendant's symptoms of

duty to warn a plaintiff of the possibility that s/he may be infected with a sexually transmitted disease if s/he has knowledge that a prior sexual partner is infected with the HIV virus. *See C.A.U. v. R.L.*, 438 N.W.2d 441, 443 (Minn.Ct.App.1989). In *C.A.U.*, defendant had engaged in homosexual activity prior to his acquaintance with plaintiff. There was no evidence (or allegations) that the defendant had any knowledge that a former sexual partner of his had been diagnosed with the HIV virus. The Minnesota Court of Appeals held that defendant did not have a duty to warn plaintiff of his HIV positive status. *See supra* note 5 (discussion of the holding of *C.A.U.*). However, the court noted:

> [T]he supreme court [of Minnesota] restated the following standard for determining whether a duty exists: If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists. It is well established that an essential element in determining whether a legal duty exists is the actor's actual or *imputed knowledge* of the facts. The supreme court has found that *"perception, memory, and experience"*

*bear on whether a person is charged with knowledge.*

*Id.* at 443 (citations omitted) (emphasis added).

As defendant points out, the court in *C.A.U.* seems to suggest that the defendant's "perception, memory and experience" in assessing the imputation of knowledge suggests that in the context of the HIV virus, knowledge that a prior sexual partner is infected with the virus may be notice of HIV exposure equivalent to symptoms. Accordingly, such knowledge may be sufficient to trigger a duty to take steps to prevent transmission of the disease to others. *See also M.M.D.*, 467 N.W.2d at 646.

Finally, the parties have not cited, nor have I been able to find, any case in which a court held that a defendant's knowledge that s/he engaged in "high risk" activity (which increases the risk of becoming infected with a sexually transmitted disease) or knowledge that s/he was a member of a high risk group (individuals who are at a higher risk for being carriers of a sexually transmitted disease), without more, creates a duty that requires a defendant to inform a plaintiff that s/he engaged in such high risk activity or is a member of a high risk group.[6] "High risk" activity as it relates to the HIV virus has been generally defined as, "unprotected anal sex; unprotected vaginal sex; unprotected oral/genital and oral/anal sex; unprotected

---

headaches, spots on his legs, and weakness and fatigue were insufficient to create a legal duty to prevent the spread of the HIV virus because the information available to the defendant in April 1985, when he was experiencing these symptoms, was insufficient to put him on notice that he was infected and could transmit the virus to the plaintiff).

**6.** Plaintiffs appear to cite *Berner v. Caldwell*, 543 So.2d 686 (Ala.1989), for this proposition. Plaintiffs' Brief at 6–7. In *Berner*, the Alabama Supreme Court recognized a cause of action for the transmission of an infectious sexual disease. In this case, the defendant alleged that he had no knowledge that he carried herpes either at the time of his relationship with plaintiff, or at any other time. *Id.* at 687. The Alabama Court does not specifically address the knowledge issue. That is, the opinion is unclear as to whether it was a fact (or a contested issue) that defendant did not know he had herpes. The opinion is also

unclear as to whether the defendant suffered any symptoms or had knowledge that a prior sex partner had been diagnosed with herpes. Thus, one reading of *Berner* is that the issue whether defendant knew that he had herpes was a question of fact for the trial court—and the reason why the case was remanded. On the other hand, the Alabama Court may have held that knowledge was not relevant in light of the specific facts of the case, to wit: that plaintiff presented credible evidence that (1) she contracted a disease that can be transmitted only by intimate sexual contact; (2) that the defendant was the only person with whom she had sexual contact; (3) that she did not have the disease prior to their relationship; and (4) near the end of their relationship she discovered that she had the disease. *Id.* at 688. I believe that the former reading of this case is correct. Moreover, I note that, from my knowledge of the facts of the case before me (of course, without the benefit of discovery) a number of factual distinctions can be drawn with *Berner*.

sex with many partners; having sex while drunk or high; sharing needles and/or works when injecting any kind of drug." Wellness Networks, Inc., *Information on HIV/AIDS* (1991).

Similarly, persons with an increased risk of AIDS infection ("high risk groups") include: (1) homosexual and bisexual men; (2) present or past IV drug abusers; (3) persons with clinical or laboratory evidence of infection, such as those with signs or symptoms compatible with AIDS or AIDS-related complex (ARC); (4) persons born in countries where heterosexual intercourse is thought to play a major role in transmission; (5) male or female prostitutes and their sex partners; (6) sex partners of infected persons or persons at increased risk; (7) all persons with hemophilia who have received clotting-factor products; and (8) newborn infants of high-risk or infected mothers. Richard Carl Schoenstein, Note, *Standards of Conduct, Multiple Defendants, and Full Recovery in Tort Liability for the Transmission of Human Immunodeficiency Virus*, 18 Hofstra L.Rev. 37, 46 n. 44 (1989) (hereinafter *"Standards of Conduct"*) (quoting Public Health Serv., Dep't of Health and Human Servs., *AIDS: Recommendations and Guidelines; November 1982–December 1987*, at 13 (1988)).

I note, however, that at least one commentator has argued that individuals who are members of high risk groups or who have engaged in high risk activity *should* be under a legal obligation (duty) to inform potential sex partners of their high risk status. *See generally Standards of Conduct* at 58–63. Also, at least one commentator has argued that an individual's high risk activity should be relevant to determination of that person's legal duty to others with respect to sexual contact. *See* David P. Brigham, Note, *You Never Told Me ... You Never Asked: Tort Liability for the Sexual Transmission of AIDS*, 91 Dick.L.Rev. 529, 546–47 (1986).

### Decision as to Counts I, IV & V

 For the most part, the parties seem to agree that claims for negligent and fraudulent transmission of the HIV virus can be maintained to the extent that a defendant (1) knew s/he was infected with the HIV virus;

(2) knew s/he was suffering symptoms associated with the HIV virus; or (3) knew of a prior sex partner who was diagnosed as having the HIV virus. After reviewing a large number of well-reasoned opinions from other jurisdictions, a number of law review articles and other commentaries, as well as general principles of Michigan tort law (all detailed above), I am inclined to agree with the parties. As stated above, under Michigan law, courts generally use the following test to determine the existence of a "legal duty": (1) a balancing of the societal interest involved; (2) the severity of the risk; (3) the burden upon the defendant [to meet the duty]; (4) the likelihood of occurrence; and, (5) the relationship between the parties. *Swartz v. Huffmaster Alarms*, 145 Mich.App. 431, 434, 377 N.W.2d 393 (1985). A number of considerations arise when balancing these factors in the context of sexual transmission of the HIV virus. For instance:

### Societal Interest

There are two competing societal interests here. First, as defendant points out, recognition of a duty to warn in certain contexts necessarily invades the constitutionally protected privacy rights of individuals in their sexual practices and in marriage, by requiring people to disclose prior sexual history to every potential sex partner. I am sensitive to this argument. Certainly, court supervision of the promises made by, and other activities engaged in, two consenting adults concerning the circumstances of their private sexual conduct is very close to an unwarranted intrusion into their right to privacy. *See, e.g., Stephen K. v. Roni L*, 105 Cal.App.3d 640, 164 Cal.Rptr. 618, 620 (1980). Nonetheless, the right of privacy is not absolute, and it, "does not insulate a person from all judicial inquiry into his/her sexual relations, especially where one sexual partner, who by intentionally tortious conduct, causes physical injury to the other." *Barbara A. v. John G.*, 145 Cal.App.3d 369, 193 Cal.Rptr. 422, 430 (Cal.Ct.App.1983).

Of course, the other competing societal interest is the prevention of the transmission of infectious disease, as well as the

interest of future plaintiffs in not becoming infected with the disease. As is well known, at this point in history there is no cure for the HIV virus. Moreover, as far as I am aware, the HIV virus often (if not always) leads to AIDS—and ultimately death. *See Standards of Conduct* at 43–49. Thus, society certainly has a strong interest in preventing the spread of this disease.

### Severity of Risk

As I just discussed, the risk associated with this tort—transmission of the HIV virus—is very high. Death is often the consequence of this disease. This fact certainly distinguishes the HIV virus and AIDS from other sexually transmitted diseases, such as herpes.

### Burden of Defendant

The Court believes that, for the most part, the burden on defendant in this case is not very high. As is pointed out by plaintiffs, if Mr. Johnson (1) had actual knowledge that he was HIV-positive, (2) knew he was suffering symptoms of the HIV virus, or (3) knew of a prior sex partner who was diagnosed with the HIV virus, all he needed to say to Ms. Doe was, "I have the HIV virus" or "I may have the HIV virus." In light of the risk associated with this disease, it is not much to ask a potential defendant to utter these few words.[7] On the other hand, recognizing human nature, it is often difficult at intimate moments to bring up potentially embarrassing facts about oneself. Nonethe-

less, in the case of the HIV virus, it can be a matter of life and death.

With respect to "burden," defendant argues that the recognition of a duty on defendants in the context of transmission of the HIV virus could have the effect of robbing the defendants of all (or most) of their financial resources in order to pay legal fees, at a time when they need those resources the most in order to combat the disease, because they too are infected with the HIV virus.

Additionally, HIV positive individuals and AIDS patients have been greatly discriminated against—and stigmatized—by our society. In recognition of this fact, a number of states have enacted HIV and AIDS confidentiality statutes which makes it a crime to reveal an individual's HIV-positive/AIDS status. *E.g.*, Mich.Comp. Laws Ann. § 333.5131 (West 1992). While these statutes are often controversial, for purposes of this discussion, I note that imposition of a duty on a defendant that requires s/he to reveal HIV virus and/or AIDS information about themselves raises confidentiality issues.

### Likelihood of Occurrence

Studies vary as to the likelihood of transmission of the HIV virus, due in part to the fact that researchers are learning more about this disease every day.[8] Overall, given the alleged facts of this case (one consensual sexual encounter), it appears that the likelihood of transmission of this disease is not very large. The World Health Organization estimates the proba-

---

7. Moreover, a defendant could abstain from sexual conduct and other activities that have the potential to transmit the HIV virus, such as donating blood. Also, when engaging in sexual contact, a defendant could at the very least use (or require his/her sexual partner to use) a contraceptive that protects against sexually transmitted diseases, such as a condom.

8. I realize that the chances of passing the HIV virus vary according to the context of the sexual encounter. For instance, studies show that a woman is more likely to get the HIV virus from a man, rather than a man receiving the disease from a woman. David Perlman, *World AIDS Conference: Women Face Growing Risk From AIDS; They Account for Nearly Half of New Cases*, San Francisco Chronicle, July 21, 1992

("During heterosexual encounters, researchers have found, women are biologically more likely than men to catch the virus from infected partners."); Patrice Gaines–Carter, *Area Women Confront Reality of AIDS; Disease's Spread Belies Enduring Image as Gay Men's Illness*, Washington Post, June 19, 1991 at A–1. Moreover, a number of individuals have speculated that there is a greater likelihood for an individual to become infected with the disease during "rough" sexual activity, such as during a rape. Benjamin Freedman, *AIDS Testing and the Law: Rape and Right to Know*, Vancouver Sun, November 14, 1992 at A–19 ("The violence surrounding rape may make the chances of sexual transmission much higher than for an act of lovemaking.").

bility of HIV transmission from a single act of heterosexual intercourse as "generally less than one infection per hundred exposures." Robin Wilson, *Sexually Active Students Playing Russian Roulette*, Seattle Times, February 6, 1992, at A-9; *see also* Dennis deLeon & Alisa Lebow, *AIDS and Rape Suspects: A Smart Test?*, N.Y. Times, June 1, 1991, at A-23 ("AIDS epidemiologists put[ ] the likelihood of transmission [of the HIV virus] after one incident of sexual intercourse at one chance in 300 to 500."); *cf.* Joyce Price, *Dental Student Carrying HIV Can't Graduate*, Washington Times, July 9, 1991 ("the odds of becoming infected [with the HIV virus] from one's dentist would be no greater than 1 in 263,158.... [T]he likelihood of HIV transmission from a surgeon would not exceed 1 in 41,667.").

### Relationship Between the Parties

The alleged tortious transmission of the HIV virus in this case occurred during the course of a single consensual sexual encounter between two adults. No special duties arise from this relationship. For instance, this case does not illustrate a special relationship where one entrusts himself or herself to the protection of another and relies upon that person to provide a place of safety, e.g., landlord-tenant, innkeeper-guest, common carrier-passenger. *Williams v. Cunningham Drug Stores*, 429 Mich. 495, 418 N.W.2d 381 (1988). Nor is this a case where the custodial circumstances involved imposed a duty on defendant to protect the plaintiff against his or her own propensities. *Hickey v. Zezulka*, 439 Mich. 408 (1992). Finally, this is not a products liability claims where an innocent bystander was injured by a defective product. *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (1965).

In balancing these factors, I find that a defendant owes a plaintiff a legal duty to, at the very least, disclose the fact that s/he may have the HIV virus, if: (1) the defendant has actual knowledge that s/he has the HIV virus; (2) the defendant has experienced symptoms associated with the HIV virus; or (3) the defendant has actual knowledge that a prior sex partner has been diagnosed as having the HIV virus. When an individual has knowledge that rises to the level of one of these three fact scenarios, the burden on that individual in revealing his or her HIV virus information is minimal when compared to the high risks of the disease. Besides my analysis on this issue, I find that the decisions of the courts of other jurisdictions to be very instructive.

Thus, to the extent that plaintiffs' Complaint alleges (1) that Mr. Johnson had actual knowledge that he had the HIV virus on the evening of June 22, 1990 or morning of June 23, 1990; (2) that Mr. Johnson had experienced symptoms associated with the HIV virus prior to the evening of June 22, 1990 or morning of June 23, 1990; or (3) that Mr. Johnson had actual knowledge that a prior sex partner has been diagnosed as having the HIV virus prior to the evening of June 22, 1990 or morning of June 23, 1990, I find that it states a claim under Rule 12(b)(6). Accordingly, to this extent, defendant's motion to dismiss is denied.

Of course, one issue still remains in this motion with respect to counts I, IV and V: can a claim for wrongful transmission of the HIV virus on negligence or fraud theories survive a Rule 12(b)(6) motion on the sole basis that a defendant knows that s/he engaged in "high risk" activity, or knows that s/he is a member of a "high risk" group. For a number of reasons, I find that legal claims cannot be stated for wrongful transmission of the HIV virus on negligence or fraud theories on the sole basis that a defendant has engaged in "high risk" activity. Thus, without more, a defendant who has had unprotected sexual encounters with multiple partners does not have a legal duty to inform a plaintiff of his or her past sexual activity. I reached this decision based on the following legal, as well as policy, considerations:

(1) I find that imposition of a duty to disclose a "high risk" lifestyle prior to sexual conduct, which theoretically puts a sex partner "at risk," would open a door better left closed. As was noted by the New York Supreme Court in the context of a claim for infliction of "AIDS-phobia":

If this cause of action were permitted to continue, any party to a matrimonial action who alleged adultery would now have a separate tort action for damages for "AIDS-phobia" because unfortunately in this day and age any deviate from the marital nest could possibly result in exposure to AIDS. Certainly any claim that a spouse interacted with a prostitute would, under plaintiff's view, be grounds for damages separate from equitable distribution. Any person who had a blood transfusion within the last eight years would have to disclose this fact to their prospective or current spouse or risk a damages action for "AIDS-phobia" since such transfusion may have resulted in an exposure to the AIDS virus. The law can only be stretched so far.

*Doe v. Doe*, 136 Misc.2d 1015, 519 N.Y.S.2d 595, 598 (1987).

Certainly, imposition of a duty to disclose one's "high risk" status raises a number of questions: as a matter of law, what is "high risk" activity? Who is in this "high risk" group? How should "high risk" be defined? Even if a workable definition of "high risk" were discovered, would a duty be imposed on non-high risk group members to disclose to every potential sex partner all prior sexual contacts with partners who were so-called "high risk" group members? Would the duty of disclosure encompass prior sexual contacts with others known to be "promiscuous" or "sexually active?" What are the equal protection implications of imposing such a standard on a class of people? What are the privacy implications of imposing such a standard on a class of people? Would the duty eventually extend to everyone who has had any sexual contact outside of a monogamous relationship? What type of theoretical exposure to the HIV virus, if any, would create a legal duty to be tested for the virus? Would the duty require doctors, nurses and other medical health professionals who come in contact with HIV infected patients to disclose this information to sexual partner?

Extending a duty to disclose the possibility, or fact, that one has engaged in "high risk" activity, which increases the odds of carrying and/or transmitting the HIV virus, is an extension I am unwilling to make. There is no duty, I find, to disclose "high risk" activity ... without more.

(2) Besides the *Swartz* balancing factors (to determine the existence of a duty) discussed above, this Court is instructed to consider at least one other issue in determining the existence of a duty: foreseeability. *Etter v. Michigan Bell Tele. Co.*, 179 Mich.App. 551, 556, 446 N.W.2d 500 (1989). As a general rule, an individual will not be held liable for risks which are not known, not apparent, or not foreseeable to him or her. *See, e.g., Stedman v. O'Neil*, 82 Conn. 199, 72 A. 923 (1909). In this case, if defendant had no actual knowledge of his own infection, had no symptoms of the HIV virus whatsoever, nor was he aware of any prior sex partner who had been diagnosed as having the HIV virus, I find that as a matter of law it was not foreseeable that he would pass the HIV virus to Ms. Doe simply because he had unprotected sex with multiple partners prior to his encounter with Ms. Doe.

(3) With the possible exception of the *Berner* case, discussed *supra*, no court in any other jurisdiction in the United States has held that knowledge of "high risk" activity, without more, is sufficient to state a claim on negligence and fraud theories for wrongful transmission of an infectious disease. Also, to my knowledge, no state legislature has passed a law that imposes such a duty to inform potential sexual partners of past "high risk" behavior. While the decisions of other states are not controlling on this Court, I find much of the analysis very persuasive and well-reasoned.

(4) I find that this ruling, e.g., knowledge of "high risk" activity, without more, is insufficient to state a claim on negligence and fraud theories for wrongful transmission of an infectious disease, is consistent with the policies of the state of Michigan. For instance, the Michigan legislature has recently enacted a criminal AIDS or HIV infection law. Mich.Comp.Laws Ann. § 333.5210 (West 1992). This statute, entitled "*Knowledge* of AIDS or HIV infection; sexual penetration, felony; definition" (emphasis added), provides in part:

A person *who knows* that he or she has or has been diagnosed as having acquired immunodeficiency syndrome or acquired immunodeficiency syndrome related complex, or *who knows* that he or she is HIV infected, and who engages in sexual penetration with another person without having first informed the other person that he or she has acquired immunodeficiency syndrome or acquired immunodeficiency syndrome related complex or is HIV infected, is guilty of a felony.

Section 333.5210(1) (emphasis added).[9]

Additionally, in the context of the sale of defective property, the Michigan Court of Appeals stated in dicta that an individual who does not have knowledge of the defective condition is not under a legal duty to make a disclosure. *Williams v. Benson,* 3 Mich.App. 9, 23–24, 141 N.W.2d 650 (1966).[10] Specifi-. cally, in *Benson,* the appellants sold a motel to appellees that was infected with termites. Appellants argued that they did not have knowledge that the hotel was infected at the time of the sale of the property. However, the facts revealed that the property had been treated in the past by appellants for termites. This information was not disclosed to appellees. The Court found that appellants had a duty to disclose their knowledge of the past termite infestation of the property. In so holding, the Court noted, "[k]nowledge of the prior defect on the part of the vendor, of course, is essential, for we do not intend to impose liability where no knowledge has ever existed. Nor do we intend to make everyone an insurer of everything that is sold." *Id.* at 24, 141 N.W.2d 650; *see also Hammond v. Matthes,* 109 Mich.App. 352, 357, 311 N.W.2d 357 (1981) ("Obviously, there is no duty to disclose what is not known. . . .").

Similarly, this Court does not wish to impose liability where "no knowledge [of the disease, symptoms or prior sex partner's infection] has ever existed." Imposing a duty to disclose on individuals who have engaged in "high risk" activity for HIV virus infection would be like imposing a duty on the sellers of the property in *Benson* to disclose the possibility of termites if the property were in a "high risk" area for termites, such as in a wooded area.

■■■■ Accordingly, for all of the reasons stated above, I hold that legal claims cannot be stated for wrongful transmission of the HIV virus on negligence or fraud theories on the sole basis that a defendant has engaged in "high risk" activity, or was a member of a "high risk" group. Thus, without more, a defendant who has had unprotected sexual encounters with multiple partners does not have a legal duty to inform a plaintiff of his or her past sexual activity. To the extent that defendant's motion addresses this issue, it is granted. Finding that count V of plaintiffs' Complaint only states a cause of action for fraud based on "high risk" activity, it will be dismissed.

### "High Risk" Plus is Relevant

■■ Nonetheless, I find that the fact that one may have engaged in "high risk" activity is relevant to a claim for wrongful transmission of the HIV virus. Certainly, my ruling that a defendant owes a plaintiff a legal duty to, at the very least, disclose the fact that s/he may have the HIV virus, if one of the factors set forth on pages 18, 20 and 23 is present, allows room for inquiry into a defendant's past sexual and/or other "high risk" activity. For instance, a plaintiff will need to inquire whether any prior sex partners of a defendant have been diagnosed as having the

---

9. I realize that this statute is criminal and therefore has a fairly specific mental state requirement. Nonetheless, the Michigan legislature could have passed a strict liability AIDS/HIV transmission law, or at least a statute that had a lower mens rea requirement.

10. I note that *Benson* was reversed by the Michigan Supreme Court without an opinion. *See* 378 Mich. 721, 1966 WL 146 (1966). However, in spite of the reversal of the appellate court's decision, *Benson* is still cited as good law. *See*

*People v. Atkins,* 397 Mich. 163, 181, 243 N.W.2d 292 (1976); *Zaschak v. Traverse Corp.,* 123 Mich. App. 126, 129, 333 N.W.2d 191 (1983); *Badon v. General Motors Corp.,* 679 F.2d 93, 96 (6th Cir. 1982). Accordingly, I believe that my limited reference to dicta in *Benson* is valid. In fact, other courts in Michigan have held in accord with the dicta I refer to in *Benson. See, e.g., Hammond v. Matthes,* 109 Mich.App. 352, 357, 311 N.W.2d 357 (1981) ("Obviously, there is no duty to disclose what is not known. . . .").

HIV virus; when such diagnosis was made; when defendant learned of the diagnosis, etc.

As can be seen from my discussion above, there are many competing policy and legal issues in this case. Accordingly, I am willing—depending on the facts of a given case—to find that past "high risk" activity could be a relevant factor. That is, for purposes of summary judgment, if a plaintiff can show' that a defendant engaged in "high risk" activity in conjunction with something else, then this Court would be willing to impose a lower requirement on the "something else." For instance, if defendant had unprotected sexual contact with multiple partners (as is alleged) *and* suffered symptoms related to the HIV virus that could be construed as "common maladies" (e.g., headaches, nondescript spots on body, weakness and fatigue, shingles, etc.), then this Court would find that defendant did in fact have a duty to act as a reasonable person under the circumstances, e.g., go to a medical professional, have an HIV virus test, refrain from sexual activity, warn sex partners, wear a condom during sexual contact, etc. I find that defendant's knowledge of his past "high risk" behavior may be relevant to this action.[11]

### Battery (count III)

Defendant argues that count III of plaintiffs' Complaint should be dismissed because plaintiffs have failed to state a claim for battery. Specifically, defendant argues that plaintiffs did not allege that he "intended to transmit the virus" to Ms. Doe, or believed that such transmission was "substantially certain" to occur. Defendant's Brief at 16. Defendant also raises a statute of limitations argument.

■ Battery is the willful and harmful or offensive touching of another person against their will. *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940); *see also* Restatement (Second) of Torts §§ 13, 18 (1985) (battery is defined as the "intentional, harmful, or offensive, and unprivileged contact with the person of another.") (hereinafter "Restatement" or "Restatement of Torts"). The

Restatement of Torts states that where "[X] consents to sexual intercourse with [Y], who knows that [X] is ignorant of the fact that [Y] has a venereal disease, [Y] is subject to liability for battery." Restatement of Torts § 892B, illustration 5; *see also Kathleen K. v. Robert B.*, 150 Cal.App.3d 992, 198 Cal. Rptr. 273 (1984).

■ Sexual activity between two individuals satisfies the contact requirement for battery. *See, e.g.,* Douglas W. Baruch, *AIDS in the Courts: Tort Liability for the Sexual Transmission of Acquired Immune Deficiency Syndrome,* 22 Tort & Ins.L.J. 165, 176 (1987). The intent required for a showing of battery does not require a desire to harm someone. Instead, it only requires the intent to make contact and encompasses not only "those consequences which are desired, but also ... those which the actor believes are substantially certain to follow from what the actor does." W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts §§ 8, 11 (5th ed. 1984); *see also Schroeder v. Auto Driveaway Co.*, 11 Cal.3d 908, 114 Cal.Rptr. 622, 631, 523 P.2d 662, 671 (1975); *State v. Lankford*, 29 Del. 594, 102 A. 63 (1917).

■ Defendant argues that plaintiffs have failed to state a claim because they did not state that defendant "intended to transmit," or knew with "substantial certainty" that he could transmit, the HIV virus to Ms. Doe. I disagree. Under Rule 12(b)(6) I must accept all allegations in the Complaint as true and construe these allegations "in the light most favorable to plaintiff[s]." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In so doing, I find that plaintiffs have alleged a cause of action for the wrongful transmission of an infectious disease under a battery theory. Specifically, under the liberal Rule 12(b)(6) standard, I find that plaintiffs have alleged that defendant knew with "substantial certainty" that he could transmit the HIV virus to Ms. Doe.

■ With respect to the statute of limitations argument, defendant argues, correctly,

---

11. This ruling (as to the relevancy of "high risk" activity) still does not save Count V which states

a claim based solely on "high risk" activity.

that a plaintiff must bring an action for battery within two years in the state of Michigan. Mich.Comp.Laws Ann. § 600.5805(1), (2). Thus, defendant asserts, that because the battery occurred on June 22, 1990 or June 23, 1990, this claim is barred.

However, as plaintiffs point out, Michigan courts follow the "discovery rule" to determine when a cause of action is accrued. *Moll v. Abbott Laboratories,* 192 Mich.App. 724, 482 N.W.2d 197 (1992). Under this rule, a claim:

> does not accrue until the plaintiff discovers or through the exercise of reasonable diligence should have discovered that the plaintiff has been injured and what a likely cause of the injury was.

*Id.* at 731, 482 N.W.2d 197.

Plaintiffs state that Ms. Doe did not know or have reason to know that Mr. Johnson had infected her with the HIV virus until June 1991. Plaintiffs' Brief at Exhibit A (Affidavit of Jane Doe at ¶ 5). Thus, Ms. Doe's claim for battery did not accrue until that time. Under the two year rule, then, Ms. Doe had until June 1993 to bring this claim. Thus, by filing suit on October 30, 1992, this claim was brought several months before the statute of limitations ran.

Accordingly, defendant's motion to dismiss count III of the Complaint is denied. I will, however, order plaintiffs to amend their Complaint to allege a date within the applicable limitations period for a battery.

### Strict Liability (count VI)

Count VI of plaintiffs' Complaint alleges that defendant is "strictly liable" for all harm suffered by Ms. Doe because his activity was "abnormally dangerous and ultrahazardous." Plaintiffs' Complaint at ¶ 61. Defendant moves to dismiss this count for failure to state a claim under Rule 12(b)(6). He makes a number of arguments in support of his motion, including the fact that no court has ever recognized a cause of action for ultrahazardous activity based on sexual activity.

The Restatement of Torts defines strict liability as:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) of Torts § 519.

Under the Restatement, the following factors must be considered in determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of other;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

The first question raised in this analysis is whether the determination of "abnormally dangerous" is a factual matter for the jury, or a legal question for the Court. Plaintiffs rely on *Perry v. McLouth Steel Corp.,* 154 Mich.App. 284, 397 N.W.2d 284 (1986), for the proposition that this issue is a factual matter for the jury. In response, defendant points to two cases in Michigan that stand for the proposition that the determination whether an activity is "abnormally dangerous" is a legal matter for the Court. *Funk v. General Motors,* 392 Mich. 91, 220 N.W.2d 641 (1974); *Locke v. Mach,* 115 Mich.App. 191, 195, 320 N.W.2d 70 (1982). Moreover, defendant cites the Restatement of Torts, comment 1, in support of his argument that the question of "abnormally dangerous" is a legal issue. This provision states, in part, that the issue whether an activity was abnormally dangerous, "is to be determined by the court ..." Restatement (Second) of Torts § 520, cmt. 1. The state of Michigan follows the Restatement of Torts on the issue of

**1398**

strict liability. *See, e.g., Locke,* 115 Mich. App. at 195, 320 N.W.2d 70.

■ I find that the question whether an activity is abnormally dangerous is a question of law for the Court. With the possible exception of *Perry,* there appears to be little support for plaintiffs' argument to the contrary. *Perry* can be distinguished from this case. First, *Perry* was not a strict liability case. It involved the question of general liability for inherently dangerous conditions and not the question whether an activity was abnormally dangerous under a strict liability theory. In fact, the *Perry* court specifically distinguished the inherently dangerous doctrine in the context of general liability with the strict liability doctrine. *Perry,* 154 Mich. App. at 300, 397 N.W.2d 284. Additionally, in *Perry,* the court appears to have concluded as a matter of law that there was evidence presented that proved that "hazardous elements" were present. Thus, the Court found that it was error for the trial court to withhold the question of "inherently dangerous" from the jury. Finally, to the extent that *Perry* did hold that the question whether an activity is abnormally dangerous under a strict liability theory is a factual issue for the jury, it is incorrectly decided in light of *Funk* as well as the Restatement of Torts.

Next, plaintiffs argue that this Court should not dismiss this count at this time because I have not yet had the opportunity to examine all of the evidence and take into account all of the factors under § 520 of the Restatement.[12] I disagree and find that I can decide whether plaintiffs have stated a claim under Rule 12(b)(6) as to this count. Specifically, the question I must answer is: giving the plaintiffs the benefit of the doubt as to all of the facts pleaded, and construing their Complaint liberally, is there any conceivable way that they can succeed on this claim, e.g., strict liability for sexual intercourse? Stated slightly different, does the state of Michigan recognize a strict liability cause of action based on sexual intercourse?

Generally, the Michigan cases imposing strict liability for "extra-hazardous" or "inherently dangerous" activity have, for the most part, involved blasting, the collection of a quantity of water in a dangerous location, storage of inflammable liquids, and like activities. *Kosters v. Seven–Up Co.,* 595 F.2d 347 (6th Cir.1979) (citing *White v. McLouth Steel Corp.,* 18 Mich.App. 688, 171 N.W.2d 662 (1969); *Smith v. Chippewa County Road Comm'rs,* 5 Mich.App. 370, 146 N.W.2d 702 (1966), *aff'd,* 381 Mich. 363, 161 N.W.2d 561 (1968); *Whittemore v. Baxter Laundry Co.,* 181 Mich. 564, 148 N.W. 437 (1914); *Mulcahy v. Argo Steel Constr. Co.,* 4 Mich.App. 116, 144 N.W.2d 614 (1966)); *accord Avemco Ins. Co., Inc. v. Rooto Corp.,* 967 F.2d 1105, 1109 (6th Cir.1992).

No case in Michigan has held that engaging in sexual activity (homosexual or heterosexual) is an "abnormally dangerous" activity. Nor has any court in the nation ever held that engaging in sexual activity is "abnormally dangerous." Moreover, I could not find any law review article or any other legal commentary that addressed this issue. Undoubtedly, this question is one of first impression in the United States.

For a number of reasons, I decline to extend the doctrine of strict liability to sexual activity. First, as stated above, Michigan courts have limited the scope of this doctrine to activities such as blasting, storing of inflammable liquids, etc. It seems unlikely to me that the Michigan courts would extend this doctrine to sexual activity.

Second, in applying the Restatement factors, it becomes clear that sexual activity, by definition, is not "abnormally" or "inherently" dangerous. Specifically, the risk associated with sexual activity can be dramatically reduced "by the exercise of reasonable care." Restatement (Second) of Torts § 520(c). For instance, the risk associated with sexual activity, spread of disease, can be reduced (although not completely eliminated) by use of a condom. Also, the Restatement suggests, and most cases have found, that in order to be abnormally dangerous, the activity must not be a matter of common usage. *Id.* at § 520(d). Sexual activity is not an uncommon endeavor.

**12.** Plaintiffs did not address the merits of the claim. Instead, they only make two arguments: (1) that this issue is one for the jury; and (2) that this matter cannot be decided at this time.

Finally, as defendant points out, because liability is imposed irrespective of fault under a strict liability theory, conduct which is not inherently dangerous or "ultrahazardous" does not become so simply because the defendant performed it negligently. *Goodwin v. Reilley*, 176 Cal.App.3d 86, 92, 221 Cal. Rptr. 374 (1985) ("[T]he act of driving a motor vehicle under the influence of alcohol, although unquestionably dangerous and hazardous-in-fact, does not come within the rubric of an ultrahazardous activity for purposes of tort liability."); *Fallon v. Indian Trail School*, 148 Ill.App.3d 931, 102 Ill.Dec. 479, 480, 500 N.E.2d 101, 102 (1986) (trampoline accidents result from negligence not from the inherently dangerous nature of activity; "The terms 'ultrahazardous,' 'abnormally dangerous,' or 'intrinsically dangerous,' as traditionally used, refer to that type of danger which is inherent in the instrumentality itself at all times and do not mean danger which arises from mere casual or collateral negligence of other with respect to it under particular circumstances.").

Here, if plaintiffs' allegations that defendant engaged in unprotected sexual contact with Ms. Doe while knowing he was infected with the HIV virus are true, then defendant's actions were unquestionably dangerous and hazardous-in-fact, like driving an automobile drunk or without a seatbelt (but driving an automobile is not "inherently dangerous"). The fact that defendant made sexual activity dangerous and hazardous does not mean that sexual activity is, in and of itself, an inherently or abnormally dangerous activity.

██ Accordingly, for all the reasons stated above, I find that sexual activity (homosexual [13] or heterosexual) is not an inherently or abnormally dangerous activity under strict liability. Thus, defendant's motion to dismiss count VI of plaintiffs' Complaint is granted.

13. Plaintiffs assert that defendant may have engaged in homosexual conduct. Plaintiffs' Brief at 19 ("There is no such sexual orientation limitation stated in the Complaint."). This allegation, if true, does not change the outcome of this Court's opinion.

14. In Michigan, where a third person can bring a claim for intentional infliction of emotional distress, it is referred to as the "bystander rule."

## Intentional Infliction of Emotional Distress as to Infant Doe (count VIII)

██ In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme or outrageous conduct; (2) which intentionally or recklessly, (3) causes, (4) extreme emotional distress. *McCahill v. Commercial Ins. Co.*, 179 Mich. App. 761, 768, 446 N.W.2d 579 (1989). Similarly, the Restatement of Torts defines intentional infliction of emotional distress as follows:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress.

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts § 46 (1965).

██ Defendant argued in his motion to dismiss that Infant Doe had failed to state a claim for intentional infliction of emotional distress because, as a third person,[14] she was not physically present when defendant's alleged conduct occurred. After-the-fact discovery of defendant's alleged outrageous conduct directed towards her mother would not suffice to state a claim. *Gustafson v. Faris*, 67 Mich.App. 363, 241 N.W.2d 208 (1976). Moreover, defendant argued that the Com-

*See Pate v. Children's Hospital of Michigan*, 404 N.W.2d 632 (Mich.Ct.App.1986) ("clearly contemplates [that the bystander (a close relative) witness] a sudden, brief, and inherently shocking accidental event which causes the injury or death, which contemporaneously, and by its very nature, results in emotional and physical injury to the plaintiff.").

plaint failed to allege any conduct by defendant directed towards Infant Doe, which is required under this tort.

Plaintiffs responded by arguing that Infant Doe is not attempting to state a claim under a third-party theory (or under the "bystander" rule). Instead, plaintiffs argue that defendant's actions were directed with intent to harm Infant Doe. At the very least, plaintiffs state, defendant acted with "reckless indifference" toward Infant Doe.

While I am extremely skeptical of this argument, I will not grant defendant's motion to dismiss this count against Infant Doe at this time. Instead, as discussed below, I will grant defendant's motion for a more definite statement as to count VIII as it pertains to Infant Doe.

#### Motion for a More Definite Statement

Under Federal Rule of Civil Procedure 12(e), a defendant may move for a "more definite statement." This rule reads as follows:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

Fed.R.Civ.P. 12(e).

Defendant has moved for a more definite statement arguing that the Complaint is indefinite in its entirety because: (1) it fails to identify claims by name, and (2) it incorporates all of the general allegations of each count alleged into every succeeding count. Moreover, defendant alleges that count VIII is unclear as to Infant Doe because it does not specify whether the alleged conduct is

directed toward Jane Doe, or to Infant Doe personally.

I find that the Complaint is sufficiently clear so that defendant can respond with one exception: count VIII. The Court was confused when reviewing the motion to dismiss with respect to count VIII as to Infant Doe. In examining the Complaint, it is unclear whether plaintiffs are alleging that defendant directed his conduct toward Infant Doe, or whether Infant Doe was a bystander. I can guess after reviewing the opposition to the motion to dismiss, what the claimed answer to this question is. However, I will grant defendant's motion for a more definite statement as to the claim asserted by Infant Doe in count VIII. Plaintiffs would be well-served by separating the claims of Jane Doe and Infant Doe with respect to this count.[15]

Accordingly, defendant's motion for a more definite statement is granted in part and denied in part.

#### Motion to Strike

Pursuant to Rule 12(f), defendant asks this Court to strike all references to defendant's alleged "sexually active," "promiscuous" or "multiple partner" lifestyle. Defendant argues that these references, even if true, are not relevant to this lawsuit.

As I indicated above, in the first section of this Opinion (addressing counts I, IV & V), the alleged fact that defendant engaged in a "high risk" lifestyle may be relevant to this lawsuit. Accordingly, defendant's motion to strike is denied.

### ORDER AND PARTIAL JUDGMENT

In accordance with the Opinion entered this date;

**IT IS HEREBY ORDERED** that defendant's motion to dismiss, filed December 10, 1992 (dkt. # 31), is **GRANTED in part** and **DENIED in part;**

**IT IS FURTHER ORDERED** that defendant's motion for a more definite statement, filed December 10, 1992 (dkt. # 31), is **GRANTED in part** and **DENIED in part;**

---

15. Defendant may renew his motion to dismiss as it pertains to the claim of Infant Doe for intentional infliction of emotional distress after plaintiffs provide a more definite statement.

IT IS FURTHER ORDERED that defendant's motion to strike, filed December 10, 1992, (dkt. # 31), is **DENIED;**

IT IS FURTHER ORDERED that plaintiffs must amend count III of the Complaint to allege a date within the applicable limitations period for battery. Plaintiffs must file the amended count within seven days of this Order;

IT IS FURTHER ORDERED that plaintiffs must supply a more definite statement with respect to the claim asserted by Infant Doe in count VIII of the Complaint (or create a separate count). Plaintiffs must do so within seven days of this Order;

**IT IS FURTHER ORDERED** that **JUDGMENT is GRANTED** in favor of defendant and against all plaintiffs with respect to **count V and count VI.**